793 A.2d 619

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DREW JOHNSON, DEFENDANT–RESPONDENT.

Argued September 10, 2001—Decided March 19, 2002.

194

*Charles Ouslander,* Special Assistant Prosecutor, argued the cause for appellant (*Daniel G. Giaquinto,* Mercer County Prosecutor, attorney).

*Jodi L. Ferguson,* Assistant Deputy Public Defender, argued the cause for respondent (*Peter A. Garcia,* Acting Public Defender, attorney).

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*John J. Farmer, Jr.,* Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised in this appeal is whether the police, under the plain view doctrine, were lawfully in a viewing area and whether they had probable cause to believe that a "light-colored" object which they observed in defendant's hand as defendant placed the object into a hole beside a post on the porch of a multi-family dwelling was contraband. The object was ultimately determined to be a clear plastic bag containing narcotics. On defendant's motion, the evidence taken from the porch was suppressed. The State appealed, and a divided Appellate Division affirmed in an unpublished opinion. The dissenting member of the panel found that the police officer's conduct was reasonable under the totality of the circumstances. The State appealed as of right based on the dissent. We hold that all of the elements of the plain view doctrine were satisfied. Hence, we reverse the order suppressing the evidence.

I.

At 11:00 p.m. on June 11, 1998, Officer Steven Elliot Wilson, a member of the Trenton Police Department's Pro–Active Unit, was on patrol in a marked police vehicle in the 600 block of Martin Luther King Boulevard in the City of Trenton. The assignment for the Pro–Active Unit was to target drug violations, prostitution and violations of city ordinances. A black male in his 30s approached Officer Wilson, identified himself as an "area resident," and said he wanted to remain anonymous. That individual told Officer Wilson that for approximately one hour he had personally observed a black male named "Drew" in the area of 695 Martin Luther King Boulevard "selling crack cocaine in small zip-lock baggies."

Officer Wilson knew that the particular area of Martin Luther King Boulevard described by the informant was a "high drug area." It was also designated as a "zero tolerance" zone, which is an area designated by the Trenton Chief of Police as an area in which there is a high volume of both drug and city ordinance violations. The address, 695 Martin Luther King Boulevard, was an attached row house with multiple apartments and a porch. The steps leading up to the porch had posts on either side.

Within one or two minutes after speaking with the citizen informant, Officer Wilson arrived at the house. As Officer Wilson and his partner pulled their marked patrol car up in front of 695 Martin Luther King Boulevard, they heard someone shout, "Five–O," a signal used to alert people to police presence. Officer Wilson illuminated the porch area of 695 Martin Luther King Boulevard with the patrol car's right-side alley light. His partner simultaneously shined a hand-held spotlight on the same porch. Officer Wilson was able to see defendant seated on the top steps and four other people on the porch. Officer Wilson recognized defendant from a past narcotics investigation.

After someone shouted "Five–O", Officer Wilson observed the people on the porch slowly move toward the entrance to the house. By the artificial illumination, he also observed defendant slowly place an object with his right hand near a support post for the overhanging porch roof that was immediately to defendant's right. Officer Wilson described the object as "light-colored." Officer Wilson then exited the patrol car and ordered defendant to come down the steps and assume the frisk position by the police car. Whether defendant was actually frisked or just ordered to assume the frisk position is unclear from the record. In any event, at that point Officer Wilson did not intend to permit defendant to leave the area. He believed that defendant was attempting to conceal narcotics when he placed the light-colored object beside the post.

Officer Wilson then climbed the steps and used his flashlight to further illuminate the porch and the area where he had seen defendant place the light-colored object. With the illumination

provided by the alley light and the hand-held spotlight, Officer Wilson saw that there was a hole a few inches deep at the base of the post where the wood had rotted away. While directing the beam of his flashlight into the hole beside the post, Officer Wilson retrieved the "light-colored" object from the hole beside the post. From the time Wilson walked up the steps he never lost sight of the post where the object was seized. After retrieving the object, but before opening the container, he believed it to be "crack cocaine packaged" apparently for street distribution. Wilson formally placed defendant under arrest following seizure of the object. In a search of defendant's person incident to the arrest, Officer Wilson found $381 "in assorted U.S. currency."

Defendant was indicted for possession of a controlled dangerous substance, in violation of *N.J.S.A.* 2C:35–10a(1), possession of a controlled dangerous substance with intent to distribute, in violation of *N.J.S.A.* 2C:35–5a(1), and possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property, in violation of *N.J.S.A.* 2C:35–7.

Prior to trial, defendant filed a motion pursuant to *Rule* 3:5–7 to suppress the evidence seized from beside the post and from his person. At the suppression hearing, the motion judge asked Officer Wilson: "When you shined your flashlight, what did you see with the beam of the flashlight illuminating?" Wilson answered: "I saw the package of suspected CDS right there." The motion judge further asked: "Is that what it appeared to you?" Wilson answered: "Yes." The prosecutor also asked Wilson: "Based on all of the circumstances that you were faced with at the time that you saw Mr. Johnson stuffing an unknown object into the hole, what did you believe was going on?" Wilson answered: "I believed he was attempting to conceal narcotics." In response to a question propounded by defense counsel, Officer Wilson stated that a zip-lock baggie is often used as a container for crack cocaine.

The trial court found Officer Wilson's testimony completely credible and adopted his testimony as the factual underpinning for

the court's decision. In finding the officer's testimony to be credible, the trial court stated he "was direct, to the point, and very factual.... He appeared to be testifying from his recollection, without embellishing, giving it in a very straightforward, direct manner. He was responsive to questioning, and indeed he was very thoughtful in his responses, in a very credible way."

The trial court considered and rejected the plain view exception to the warrant requirement. The court stated:

I do not believe ... this is a plain-view case. It seems like it is, or should be, or could be, but the more I think about it, and I thought about it a lot, I don't see it to be that. I don't see it to be similar, either, to a case cited by the State, and that is the matter of *State v. Ford*, 278 *N.J.Super.* 351, 651 *A.*2d 103, a 1995 Appellate Division decision. There is a fair amount of language in *Ford* that appears to apply to this case, but based upon my analysis of *Ford*, I don't think so.

\* \* \*

Unlike the *Ford* case, there was no police observation of the defendant engaging in narcotics transactions alone or with others, as was the situation in *Ford.* There was no observation or recognition of the object, it was simply a white object, a white object that could be anything. It wasn't even plastic. If it were plastic, the court might be persuaded in some way differently, but the truthful testimony from this very credible officer was, it was something white that the defendant did what, slowly placed on the ground. You don't have the furtive movement; we don't have the quick actions; we don't have the secreting of something, the stuffing of something, the hiding of something. All of those words, those descriptions that we see often are, are absent here.

The trial court also considered and rejected whether probable cause existed at the time of defendant's arrest that would validate a search incident to that arrest, and whether probable cause existed to search the porch based on exigent circumstances. In rejecting those exceptions to the warrant requirement, the court stated:

The critical aspects are, from the State's perspective, as noted in the briefing and argument as well, there was an area resident who had information concerning Drew Johnson. Veracity is to be assumed in such a situation. There was a fair amount of information that was given there, not great specificity, but significant information to warrant further police action, which is exactly what happened.

\* \* \*

In my judgment, the police officer certainly had grounds at the time, based upon a reasonable suspicion, to speak to the defendant, to undertake an investigatory stop of the defendant, to approach the defendant, things of that nature. He avoided that step, he missed that step. He was prompted to immediate action, and

he so testified, to an immediate arrest and frisking of the defendant, and then a search of the area. It was the search of the area with the flashlight on the porch itself, that first gave rise to the recognition that it was CDS that the defendant had, or it certainly appeared to be CDS at the time.

In [this] case we don't have ... ample probable cause; at best you might say there is negligible probable cause, but not enough, in this court's judgment, to reach the standard that is [required] to [satisfy] the state's burden. And here, we also don't even know what that bag is or what that object is. In the *Ford* case it was very clear evidence with regard to it.... Under all of the circumstances presented, once again, I'm satisfied the state has not met its burden.

After granting the State leave to appeal, a divided Appellate Division panel affirmed the suppression order. In the majority's view, even to the extent the informant's tip was confirmed by the police officers' observations when they came upon the scene, there was not enough in what they saw to establish that criminal activity was afoot. The majority acknowledged, however, that suppression of the evidence would have been inappropriate if the police had witnessed any overt acts by defendant to suggest that he was involved in drug trafficking activity. The majority also rejected the State's argument that defendant abandoned the cocaine, but implied that it might have ruled differently if the contraband had been placed a sufficient distance from where defendant was sitting to separate it from his person.

The dissenting member on the appellate panel found that the police conduct was totally reasonable under the totality of the circumstances. As a preliminary matter, the dissent noted that the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution provide a guarantee only against unreasonable searches and seizures. The dissent also argued that probable cause existed based on the totality of the circumstances and that there was no search because the police did not invade an area in which defendant had a reasonable expectation of privacy.

After this Court denied the State's motion for leave to appeal, the indictment was dismissed because the State was unable to prosecute its case in light of the suppression order. The State

appealed as of right, based on the dissent, pursuant to *Rule* 2:2–1(a)(2).

Based on our review of the record and some of the trial court's factual findings, there exists some uncertainty concerning whether the evidence that was seized from the hole beside the post had been observed by the trial court despite the failure of the testimonial evidence to describe what was seized. For example, at one point the trial court found that when Officer Wilson looked into the hole beside the post, "he saw a package, ... and in the package was a number of decks or a number of baggies of crack—of cocaine of some kind." At another point, the trial court found "[t]here was no observation or recognition of the object." The trial court also described the container as a "white object, a white object that could be anything. It wasn't even plastic." Because those findings are not based on any evidentiary support in the record, we remanded the matter to the trial court to supplement the record so that we could properly perform our judicial review.

On the remand, we directed the trial court "to conduct a conference with counsel for the State and for the defense, on the record, to specify the nature, size and color of the bag and its contents seized by the police" from the hole beside the post. The trial court stated that the evidence was not produced at the original suppression hearing. The court observed the evidence on remand and described it as

> a clear plastic-like bag, of thin texture, containing fifteen one-half inch by three-quarter inch pink plastic baggies, each of which contain [sic] a tan or a cream colored substance. The bag is soft and wrinkled making it difficult to discern the contained baggies.... [I]t is estimated that its dimensions approximate two inches by two and one-half to three inches.... At a distance of a few feet it would be reasonable to describe the bag and its contents as simply a "light colored object."

We will utilize that additional information in our decision.

## II.

The State, through the Mercer County Prosecutor, argues that the police were lawfully on the porch when defendant was observed making a furtive gesture toward the pole and that probable

cause existed to search the area of the pole and seize what the police suspected were drugs placed there by defendant. Finally, the State argues that defendant abandoned the drugs once he placed them in the hole beside the pole. The Attorney General, as *amicus curiae*, joins in those arguments.

## A.

The similarly worded provisions of the Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution protect citizens against unreasonable police searches and seizures by requiring warrants issued upon probable cause " 'unless [the search] falls within one of the few well-delineated exceptions to the warrant requirement.' " *State v. Maryland*, 167 *N.J.* 471, 482, 771 *A.*2d 1220 (2001) (quoting *Schneckloth v. Bustamonte*, 412 *U.S.* 218, 219, 93 *S.Ct.* 2041, 2043, 36 *L. Ed.*2d 854, 858 (1973)). The *prima facie* invalidity of a warrantless search is overcome only if that search falls within one of the exceptions that has been created by the United States Supreme Court. *State v. Hill*, 115 *N.J.* 169, 173, 557 *A.*2d 322 (1989). "In analyzing the validity of warrantless searches, the strands of constitutional exceptions to the Fourth Amendment must be kept untangled." *State v. Welsh*, 84 *N.J.* 346, 354, 419 *A.*2d 1123 (1980).

Here, the State seems to rely on the search incident to an arrest exception articulated in *Chimel v. California*, 395 *U.S.* 752, 762–63, 89 *S.Ct.* 2034, 2040, 23 *L. Ed.*2d 685 (1969). The trial court and the Appellate Division found that probable cause was not established to arrest defendant and, therefore, the search incident to an arrest exception was not applicable. Both courts also rejected the plain view exception and concluded that no other exception to the warrant requirement validated the search. We disagree and conclude that the plain view exception articulated by this Court in *State v. Bruzzese*, 94 *N.J.* 210, 236–38, 463 *A.*2d 320 (1983), *cert. denied*, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984), which relied on *Texas v. Brown*, 460 *U.S.* 730, 103 *S.Ct.* 1535, 75 *L. Ed.*2d

502 (1983), and *Coolidge v. New Hampshire*, 403 *U.S.* 443, 91 *S.Ct.* 2022, 29 *L.Ed.*2d 564 (1971), controls this case. Because we believe the facts require a reversal based on the plain view exception, "it is not necessary for us to unburden ourselves of a definitive treatise" on either the search incident to an arrest exception or abandonment. *State v. Hill, supra,* 115 *N.J.* at 174, 557 *A.*2d 322.

 The analytical framework for this opinion must begin with an acknowledgment that, although the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protect against both unreasonable searches and seizures, there are important differences between the interests of citizens protected from unlawful searches and those protected from unlawful seizures that are relevant to the plain view doctrine. A search threatens a citizen's personal privacy interest while a seizure threatens a citizen's interest in retaining possession of his or her property. *Segura v. United States,* 468 *U.S.* 796, 810, 104 *S.Ct.* 3380, 3388, 82 *L.Ed.*2d 599, 612 (1984). Frequently, a seizure is preceded by a search. But when containers are involved, the converse is often the case. An object is considered to be in plain view if it can be seized without compromising any interest in personal privacy. Because seizure of an object in plain view threatens the possessory interest, surrounding circumstances, such as when a suspect abandons property, may make it unnecessary to obtain a warrant to justify a seizure. *Texas v. Brown, supra,* 460 *U.S.* at 737–40, 103 *S.Ct.* at 1540–42, 75 *L.Ed.*2d at 510–11.

 The plain view doctrine requires the police officer to lawfully be in the viewing area. *Coolidge, supra,* 403 *U.S.* at 465–68, 91 *S.Ct.* at 2037–39, 29 *L.Ed.*2d at 582–84; *State v. Bruzzese, supra,* 94 *N.J.* at 236, 463 *A.*2d 320. The officer must discover the evidence "inadvertently," "meaning that he did not know in advance where evidence was located nor intend beforehand to seize it." *State v. Bruzzese, supra,* 94 *N.J.* at 236, 463 *A.*2d 320 (referring to *Coolidge, supra,* 403 *U.S.* at 470, 91 *S.Ct.* at 2040, 29

*L.Ed.*2d at 585). The third element required by *Coolidge* is that it had to be "immediately apparent" to the officer that items in plain view were evidence of a crime, contraband, or otherwise subject to seizure. *Ibid.* We explained in *Bruzzese* how the third element of *Coolidge* has been modified:

> The Court's plurality opinion in *Texas v. Brown* adopted the first and second requirements of *Coolidge,* but modified the third. The plurality concluded that lower courts had erroneously interpreted "immediately apparent" to require that the searching police officer have an unduly high degree of certainty as to the incriminating character of the evidence. *Texas v. Brown,* 460 *U.S.* at 740, 103 *S.Ct.* at 1542, 75 *L.Ed.*2d at 513. This interpretation, in the plurality's view, excessively narrowed the scope of permissible plain view seizures. *Id.* The plurality therefore modified the third requirement to mean that in order to seize evidence in plain view a police officer must have "probable cause to associate the property with criminal activity." *Id.* at 740, 103 *S.Ct.* at 1542, 75 *L.Ed.*2d at 513. Since the officer need not be certain that the seized item is evidence of a crime, it presumably would be easier for the State to prove the *Texas* standard than the "immediately apparent" standard of *Coolidge.* All the officer needs to meet the third requirement is "[a] 'practical, nontechnical' probability that incriminating evidence is involved." *Id.* at 742, 103 *S.Ct.* at 1543, 75 *L.Ed.*2d at 514. In determining whether the officer has probable cause to associate the item with criminal activity, the court looks to what the police officer reasonably knew at the time of the seizure. In *Texas v. Brown,* for example, the Court relied substantially upon the policeman's experienced knowledge of drug-trafficking techniques in upholding his decision to seize tied-off balloons found in defendant's car. *Id.* at 742, 103 *S.Ct.* at 1543, 75 *L.Ed.*2d at 514.
>
> There is merit in adopting these *Texas v. Brown* requirements to establish the plain view exception. We do not believe that a police officer lawfully in the viewing area must close his eyes to suspicious evidence in plain view. The Supreme Court's rule merely requires that "the facts available to the officer would 'warrant a man of reasonable caution in the belief' [citation omitted] that certain items may be contraband, or stolen property or useful as evidence of a crime, it does not demand any showing that such belief be correct or more likely true than false." *Id.* The Supreme Court's three plain view requirements comport with overall constitutional standard of reasonableness. Hence, we adopt them as the law of New Jersey.
>
> [*State v. Bruzzese, supra,* 94 *N.J.* at 236–38, 463 *A.*2d 320 (footnote omitted) (alterations in original) ].

Four years after our decision in *Bruzzese,* the United States Supreme Court made explicit the probable cause requirement that the plurality opinion in *Texas v. Brown* had required. *Arizona v. Hicks,* 480 *U.S.* 321, 327, 107 *S.Ct.* 1149, 1153, 94 *L.Ed.*2d 347, 354–55 (1987). The Court stated:

> We have not ruled on the question whether probable cause is required in order to invoke the "plain view" doctrine. Dicta in *Payton v. New York*, 445 *U.S.* 573, 587, 100 *S.Ct.* 1371, 1380, 63 *L.Ed.*2d 639 (1980), suggested that the standard of probable cause must be met, but our later opinions in *Texas v. Brown*, 460 *U.S.* 730, 103 *S.Ct.* 1535, 75 *L.Ed.*2d 502 (1983), explicitly regarded the issue as unresolved, see *id.*, at 742, n. 7, 103 *S.Ct.* at 1543 n. 7 (plurality opinion); *id.*, at 746, 103 *S.Ct.* at 1545 (STEVENS, J., concurring in judgment).
>
> We now hold that probable cause is required.
>
> [*Ibid.*]

## B.

We focus first on whether Officer Wilson and his partner had a right to be where they could make observations of alleged illegal drug activities occurring on the porch of 695 Martin Luther King Boulevard at the relevant time. "The question whether property in plain view of the police may be seized ... must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question." *Texas v. Brown, supra,* 460 *U.S.* at 737, 103 *S.Ct.* at 1541, 75 *L.Ed.*2d at 510; *accord State v. Lewis,* 116 *N.J.* 477, 485, 561 *A.*2d 1153 (1989); *State v. Ford,* 278 *N.J.Super.* 351, 355, 651 *A.*2d 103 (App.Div.1995). It cannot be denied that "a police officer lawfully in the viewing area [is not required to] close his eyes to suspicious evidence in plain view." *State v. Bruzzese, supra,* 94 *N.J.* at 237, 463 *A.*2d 320. Here, the question whether Officer Wilson was lawfully in the viewing area depends on whether the porch was part of the curtilage not protected by the Fourth Amendment.

It is settled law that "[c]ertain lands adjacent to a dwelling called the 'curtilage' have always been viewed as falling within the coverage of the Fourth Amendment." 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 2.3(f) (3d ed.1996). Whether a part of the curtilage is afforded Fourth Amendment protection depends on "the proximity of the area ... to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United*

*States v. Dunn,* 480 *U.S.* 294, 301, 107 *S.Ct.* 1134, 1139, 94 *L.Ed.*2d
326, 334–35 (1987). It is also settled that

> a portion of the curtilage, being the normal route of access for anyone visiting the
> premises, is "only a semi-private area." ... Thus, when the police come on to
> private property to conduct an investigation or for some other legitimate purpose
> and restrict their movements to places visitors could be expected to go (e.g.,
> walkways, driveways, porches), observations made from such vantage points are
> not covered by the Fourth Amendment.
>
> [LaFave, *supra,* § 2.3(f) (footnotes omitted) (quoting *United States v. Magana,*
> 512 *F.*2d 1169 (9th Cir.1975), *cert. denied,* 423 *U.S.* 826, 96 *S.Ct.* 42, 46 *L.Ed.*2d
> 43 (1975)).]

That is so because "[w]hat a person knowingly exposes to the
public, even in his own home or office, is not a subject of Fourth
Amendment protection." *Katz v. United States,* 389 *U.S.* 347, 351,
88 *S.Ct.* 507, 511, 19 *L.Ed.*2d 576, 582 (1967). For those reasons,
the "police may enter upon portions of private property normally
open to the public, such as a front porch, and attain a plain view
observation through a window." *State v. Alexander,* 170 *N.J.Su-
per.* 298, 304, 406 *A.*2d 313 (Law Div.1979), *aff'd o.b.,* 173 *N.J.Su-
per.* 260, 414 *A.*2d 36 (App.Div.1980).

 Viewed in that context, the porch involved in this case,
although part of the curtilage, has a diminished expectation of
privacy. We agree with the Appellate Division that "[t]he curti-
lage concept has limited applicability with respect to multi-occu-
pancy premises because none of the occupants can have a reason-
able expectation of privacy in areas that are also used by other
occupants." *State v. Ball,* 219 *N.J.Super.* 501, 506–07, 530 *A.*2d
833 (App.Div.1987). Here, Officer Wilson and his partner went to
695 Martin Luther King Boulevard to investigate a report of drug
activity. They were there for a legitimate investigative purpose.
Officer Wilson did not go beyond the porch, thus restricting his
movements to the places that any other visitor could be expected
to go. Defendant's diminished expectation of privacy on the porch
was further indicated by the fact that when he placed the package
in a hole beside the post on the porch of the multiple-family row
house, a portion of the home which all residents and visitors must
use to enter, there were four other people on the porch that

evening. In short, the conduct that enabled Officer Wilson to observe the object in the hole was not a search within the meaning of the Fourth Amendment. Any object in the hole could have been observed by inquisitive passers-by or any other member of the public. There is no reason why a diligent police officer should not be allowed to observe that which he or she could have observed as a private citizen. We conclude, therefore, that the "light-colored" object was in plain view because Officer Wilson had a right to be in a position where he could observe that object in defendant's hand as defendant placed it beside the post.

The fact that the police were on the porch after dark does not affect the analysis. It is well-settled by the great weight of authority in this country that no distinction is to be made based on whether natural or artificial lighting was used to visualize the "light-colored" object as it was being placed in the hole and after it had been placed in the hole. "[T]he use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection." *Texas v. Brown, supra,* 460 *U.S.* at 740, 103 *S.Ct.* at 1542, 75 *L.Ed.*2d at 512; *accord United States v. Dunn, supra,* 480 *U.S.* at 305, 107 *S.Ct.* at 1141, 94 *L.Ed.*2d at 337; *United States v. Lee,* 274 *U.S.* 559, 563, 47 *S.Ct.* 746, 748, 71 *L.Ed.*1202, 1204 (1927); *State v. Moller,* 196 *N.J.Super.* 511, 515, 483 *A.*2d 433 (App.Div.1984); *State v. Griffin,* 84 *N.J.Super.* 508, 517, 202 *A.*2d 856 (App.Div. 1964). "[T]he use of a flashlight does not transform an otherwise reasonable observation into an unreasonable search within the meaning of the Fourth Amendment or under the New Jersey Constitution." *State v. Gibson,* 318 *N.J.Super.* 1, 11, 722 *A.*2d 960 (App.Div.1999) (citations omitted). Many other courts have reached similar conclusions. *Mollica v. Volker,* 229 *F.*3d 366, 369 (2d Cir.2000); *United States v. Rickus,* 737 *F.*2d 360, 367 n. 3 (3d Cir.1984); *United States v. Chesher,* 678 *F.*2d 1353, 1356 n. 2 (9th Cir.1982); *United States v. Ocampo,* 650 *F.*2d 421, 427 (2d Cir. 1981); *United States v. Coplen,* 541 *F.*2d 211, 215 (9th Cir.1976), *cert. denied,* 429 *U.S.* 1073, 97 *S.Ct.* 810, 50 *L.Ed.*2d 791 (1977);

*United States v. Lara,* 517 *F.*2d 209, 211 (5th Cir.1975); *United States v. Johnson,* 506 *F.*2d 674, 676 (8th Cir.1974), *cert. denied,* 421 *U.S.* 917, 95 *S.Ct.* 1579, 43 *L.Ed.*2d 784 (1975); *United States v. Booker,* 461 *F.*2d 990, 992 (6th Cir.1972); *United States v. Hanahan,* 442 *F.*2d 649, 654 (7th Cir.1971); *Albo v. State,* 379 *So.*2d 648, 650 (Fla.1980); *Redd v. State,* 240 *Ga.* 753, 243 *S.E.*2d 16, 18 (1978), *cert. denied,* 442 *U.S.* 934, 99 *S.Ct.* 2870, 61 *L.Ed.*2d 304 (1979); *State v. Chattley,* 390 *A.*2d 472, 476 (Me.1978); *Livingston v. State,* 317 *Md.* 408, 564 *A.*2d 414, 417 (1989); *State v. Vohnoutka,* 292 *N.W.*2d 756, 757 (Minn.1980); *Dick v. State,* 596 *P.*2d 1265, 1267 (Okla.Crim.App.1979); *State v. Miller,* 45 *Or.App.* 407, 608 *P.*2d 595, 597 (1980), *review denied,* 289 *Or.* 275 (1980); *State v. Lee,* 633 *P.*2d 48, 51–52 (Utah), *cert. denied,* 454 *U.S.* 1057, 102 *S.Ct.* 606, 70 *L.Ed.*2d 595 (1981).

### C.

Next, we consider whether the "inadvertence prong" of the *Coolidge* plurality requirement was satisfied. That prong is satisfied if the police did not "know in advance the location of the evidence and intend to seize it," essentially relying on the plain-view doctrine only as a pretense. *Coolidge, supra,* 403 *U.S.* at 470, 91 *S.Ct.* at 2040, 29 *L.Ed.*2d at 585.

In *Horton v. California,* 496 *U.S.* 128, 110 *S.Ct.* 2301, 110 *L. Ed.*2d 112 (1990), the United States Supreme Court altered the "inadvertence prong" of the plain view doctrine. In that case, the defendant was convicted of armed robbery after the police seized weapons found during a search authorized by a warrant. *Id.* at 130, 110 *S.Ct.* at 2304, 110 *L.Ed.*2d at 118. The warrant, however, authorized a search for only the proceeds of the robbery, three specifically described rings, but not the weapons used during the crime. *Id.* at 131, 110 *S.Ct.* at 2304, 110 *L.Ed.*2d at 119. Although the search did not locate the stolen property, it did locate the weapons in plain view. The officer executing the warrant seized a machine gun, a revolver, two stun guns, an advertising brochure for the organization whose treasurer had been robbed, a handcuff

key, and clothes belonging to the victim who had been stunned and handcuffed during the course of the robbery. *Id.* at 131, 110 *S.Ct.* at 2304–05, 110 *L.Ed.*2d at 119.

The officer testified that "while he was searching for the rings, he ⁓was also interested in finding other evidence connecting [the defendant] to the robbery." *Id.* at 131, 110 *S.Ct.* at 2305, 110 *L.Ed.*2d at 119. The defendant moved to suppress the evidence, arguing that the guns were not discovered "inadvertently," and thus did not fall within the "plain view" doctrine. *Id.* at 131, 110 *S.Ct.* at 2305, 110 *L.Ed.*2d at 119. In rejecting the defendant's argument, the Court stated:

> The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of the warrant or a valid exception to the warrant requirement. . . . On the other hand, if he or she has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first.
>
> [*Id.* at 138–39, 110 *S.Ct.* at 2309, 110 *L.Ed.*2d at 123–24.]

The Court concluded that the seizure of the weapons was authorized because

> the items seized from [the defendant's] home were discovered during a lawful search authorized by a valid warrant. When they were discovered, it was immediately apparent to the officer that they constituted incriminating evidence. He had probable cause, not only to obtain a warrant to search for the stolen property, but also to believe that the weapons and handguns had been used in the crime he was investigating. The search was authorized by the warrant; the seizure was authorized by the "plain view" doctrine.
>
> [*Id.* at 142; 110 *S.Ct.* at 2310–11, 110 *L.Ed.*2d at 126.]

Here, there is no suggestion in the evidence presented that the visit to 695 Martin Luther King Boulevard was a pretext whereby evidence of narcotics violations might be uncovered in plain view. Officer Wilson went to the area to investigate the tip from the citizen informant. While conducting that investigation he saw defendant place the "light-colored" object into the hole.

> [T]he seizure of an object in plain view does not involve an intrusion on privacy. If the interest in privacy has been invaded, the violation must have occurred before the object came into plain view and there is no need for an inadvertence limitation on seizures to condemn it. The prohibition against general searches and general

warrants serves primarily as a protection against unjustified intrusions on privacy. But reliance on privacy concerns that support that prohibition is misplaced when the inquiry concerns the scope of an exception that merely authorizes an officer with a lawful right of access to an item to seize it without as warrant.

[*Id.* at 141–42, 110 *S.Ct.* at 2310, 110 *L.Ed.*2d at 125–26.]

We conclude that whatever remains of the "inadvertence" requirement of plain view since *Horton* was satisfied in this case because the police officers did not know in advance that evidence would be found in a hole beside one of several posts on the porch.

### D.

■ The third prong of the plain-view doctrine requires us to decide whether the incriminating nature of the "light-colored" object was immediately apparent to Officer Wilson before he seized it from the hole. In light of *Horton, Hicks,* and *Bruzzese,* the "immediate apparent" prong requires the Court to determine whether probable cause existed to associate the "light-colored" object that was in plain view with criminal activity *before* seizing the object from the hole. We held in *State v. Bruzzese, supra,* 94 *N.J.* at 237, 463 *A.*2d 320, that when "determining whether the officer has probable cause to associate the item with criminal activity, the court looks to what the police officer reasonably knew at the time of the seizure."

■ As part of that probable cause determination, we turn first to a consideration of whether the light-colored object Officer Wilson observed in the hole concealed its contents from plain view. *United States v. Ross,* 456 *U.S.* 798, 822–23, 102 *S.Ct.* 2157, 2172, 72 *L.Ed.*2d 572, 592 (1982); *State v. Hempele,* 120 *N.J.* 182, 203, 576 *A.*2d 793 (1990). "[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." *United States v. Ross, supra,* 456 *U.S.* at 822–23, 102 *S.Ct.* at 2172, 72 *L.Ed.*2d at 591–92. The trial court did not specifically determine whether the light-colored object defendant placed in the hole by the porch post was opaque, *cf. Hempele, supra,* 120 *N.J.* at 203, 576 *A.*2d 793 ("Because ordinary opaque garbage bags conceal their contents from plain-view, the presump-

tion is that an expectation of privacy in the contents is reasonable"), a "small zip-lock baggie" as described by the informant, a "light-colored" object as Officer Wilson testified, or a "white" object or package as the trial court stated. Therefore, whether the bag in this case concealed its contents from plain view is a factor to be considered when determining whether the State established probable cause before seizing and opening the container. If the drugs were visible before the container was seized, that would "eliminate[ ] any question of whether there existed probable cause to make an arrest" based on the obvious contraband. *State v. Henry*, 133 *N.J.* 104, 116, 627 *A*.2d 125, *cert. denied*, 510 *U.S.* 984, 114 *S.Ct.* 486, 126 *L.Ed.*2d 436 (1993).

The record now informs us that the container variously described during the suppression hearing is a "clear plastic-like bag, of thin texture, containing fifteen one-half inch by three-quarter inch pink plastic baggies, each of which contains a tan or cream colored substance." The exterior dimensions of the clear plastic bag are approximately two inches by two and one-half to three inches. That bag could reasonably be identified as a "light-colored" object from a distance of a few feet. Although the container is a clear plastic bag, Officer Wilson did not testify that he saw crack-cocaine inside that bag before seizing it. For that reason, we must examine the totality of the circumstances to determine whether probable cause existed before the seizure.

"Probable cause exists if at the time of the police action there is a 'well grounded' suspicion that a crime has been or is being committed." *State v. Sullivan*, 169 *N.J.* 204, 211, 777 *A*.2d 60 (2001) (quoting *State v. Waltz*, 61 *N.J.* 83, 87, 293 *A*.2d 167 (1972)). It requires nothing more than "a practical, common-sense decision whether, given all the circumstances ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Demeter*, 124 *N.J.* 374, 380–81, 590 *A*.2d 1179 (1991) (quoting *Illinois v. Gates*, 462 *U.S.* 213, 238, 103 *S.Ct.* 2317, 2322, 76 *L.Ed.*2d 527, 548 (1983)); *accord State v. Novembrino*, 105 *N.J.* 95, 117–18, 519 *A*.2d 820 (1987). The

flexible, practical totality of the circumstances standard has been adopted because probable cause is a " 'fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' " *Schneider v. Simonini*, 163 *N.J.* 336, 361, 749 *A.*2d 336 (2000), *cert. denied*, 531 *U.S.* 1146, 121 *S.Ct.* 1083, 148 *L.Ed.*2d 959 (2001) (quoting *Illinois v. Gates, supra*, 462 *U.S.* at 232, 103 *S.Ct.* at 2329, 76 *L.Ed.*2d at 544). Probable cause "merely requires that 'the facts available to the officer would warrant a man of reasonable caution in the belief' [citation omitted] that certain items may be contraband ... or useful as evidence of a crime, it does not demand any showing that such belief be correct or more likely true than false." *State v. Bruzzese, supra*, 94 *N.J.* at 237, 463 *A.*2d 320 (quoting *Texas v. Brown, supra*, 460 *U.S.* at 742, 103 *S.Ct.* at 1543, 75 *L.Ed.*2d at 514)(quoting *Carroll v. United States*, 267 *U.S.* 132, 45 *S.Ct.* 280, 288, 69 *L.Ed.* 543 (1925))). Finally, in determining the reasonableness of actions taken by Officer Wilson under the Fourth Amendment and the New Jersey Constitution, consideration must be given "to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 *U.S.* 1, 27, 88 *S.Ct.* 1868, 1883, 20 *L.Ed.*2d 889, 909 (1968).

Based on those legal principles, we hold that Officer Wilson had probable cause to associate the "light-colored" object with criminal activity, in light of his experience and the facts known to him, and reasonable inferences to be drawn from those facts. Officer Wilson went to 695 Martin Luther King Boulevard because an area resident informed him that the informant had observed an individual named Drew selling crack cocaine in small zip-lock baggies from the area of that address for approximately one hour. The informant's observations of defendant ended only a few minutes before speaking to Officer Wilson. Even when an informant's tip standing alone may not be sufficient to constitute probable cause, it may generate a reasonable and articulable suspicion justifying further investigation. *State v. Zutic*, 155 *N.J.*

103, 113, 713 *A.*2d 1043 (1998). Thus, the information from the informant may properly be considered when determining whether probable cause exists. *State v. Smith,* 155 *N.J.* 83, 92, 713 *A.*2d 1033, *cert. denied,* 525 *U.S.* 1033, 119 *S.Ct.* 576, 142 *L. Ed.*2d 480 (1998). The reliability of an informant's tip must be analyzed under the totality of the circumstances. *Illinois v. Gates, supra,* 462 *U.S.* at 238, 103 *S.Ct.* at 2332, 76 *L.Ed.*2d at 548; *State v. Novembrino, supra,* 105 *N.J.* at 122, 519 *A.*2d 820. Two highly relevant factors "that are included in the 'totality of the circumstances' are the informant's 'veracity' and the informant's 'basis of knowledge.'" *State v. Smith, supra,* 155 *N.J.* at 93, 713 *A.*2d 1033 (quoting *Illinois v. Gates, supra,* 462 *U.S.* at 238, 103 *S.Ct.* at 2332, 76 *L.Ed.*2d at 548). An informant's veracity can be established from past instances of reliability, but there is less need to establish the credibility of information provided by an ordinary citizen such as the informant involved in this case. *State v. Kurland,* 130 *N.J.Super.* 110, 114–15, 325 *A.*2d 714 (App.Div.1974). The basis of knowledge can be satisfied when an informant's tip expressly or clearly relates how the informant came to know of the criminal activity. *State v. Smith, supra,* 155 *N.J.* at 94, 713 *A.*2d 1033; *State v. Novembrino, supra,* 105 *N.J.* at 113, 519 *A.*2d 820.

The totality of the circumstances establishes that the informant's tip was reliable. The informant's veracity is presumed because he characterized himself as a citizen informant. *State v. Kurland, supra,* 130 *N.J.Super.* at 114–15, 325 *A.*2d 714. Further, the informant described defendant's criminal activity based on his personal observations of his drug sales, thus establishing his basis of knowledge. *State v. Smith, supra,* 155 *N.J.* at 97, 713 *A.*2d 1033. He described defendant by name, provided an address, indicated the specific type of CDS being sold, recounted the manner of packaging the drugs that were being sold, specifically, in small zip-lock baggies, and stated that he had personally observed defendant's conduct for approximately one hour. Those specific facts establish that the informant had a sufficient basis of personal knowledge that defendant was engaged in criminal activity. *Id.* at 97–98, 713 *A.*2d 1033. Under the totality of the

circumstances, the tip provided sufficient detail to be considered a substantial factor when determining whether there was probable cause to associate the "light-colored" object with criminal activity. The contents of the tip and the level of detail contained in the information provided Officer Wilson established a sufficient basis of knowledge and veracity. *Cf. State v. Zutic, supra,* 155 *N.J.* at 111, 713 *A.*2d 1043 (suppressing evidence where informant's tip lacked necessary detail to indicate criminal wrongdoing); *accord State v. Novembrino, supra,* 105 *N.J.* at 125–26, 519 *A.*2d 820. Consequently, the tip satisfies both prongs of the test established in *Aguilar v. Texas,* 378 *U.S.* 108, 84 *S.Ct.* 1509, 12 *L.Ed.*2d 723 (1964), "which continues to illuminate application of the recently-adopted totality-of-the-circumstances test for probable cause" established in *Illinois v. Gates, supra,* 462 *U.S.* at 230–31, 103 *S.Ct.* at 2328–29, 76 *L.Ed.*2d at 543–44. *State v. Lewis,* 116 *N.J.* 477, 486, 561 *A.*2d 1153 (1989).

▮ The high-crime character of an area, as part of the totality of the circumstances, also may be used in determining probable cause. *State v. Demeter, supra,* 124 *N.J.* at 385, 590 *A.*2d 1179 (citing *United States v. White,* 655 *F.*2d 1302, 1304 (D.C.Cir.1981)). In his testimony, Officer Wilson stated that 695 Martin Luther King Boulevard was located in a high drug area which had a high volume of both drug and city ordinance violations. Upon arriving at the address, Officer Wilson heard someone shout "Five–O," a signal used to alert people to police presence. After hearing this warning, defendant slowly placed the "light-colored" object near a support post for the porch. Officer Wilson also testified that he recognized defendant from a prior narcotics investigation. The shout of "Five–O," defendant's attempt to conceal the object, and Wilson's recognition of defendant from a prior drug investigation further corroborate the information provided in the tip and are factors to be considered in determining whether probable cause existed. *Cf. State v. Colvin,* 123 *N.J.* 428, 437, 587 *A.*2d 1278 (1991) (finding with regard to warrantless automobile search that "justification turns on the circumstances that make it impractical

to obtain a warrant when the police have probable cause to search the car.")

Finally, upon shining his flashlight into the hole, Officer Wilson saw the "light-colored" object that confirmed his earlier belief that the object was "crack cocaine packaged." He testified that, in his experience, zip-lock baggies are often used as containers for crack cocaine. His experience came from patrolling this high drug activity area for two and one-half years while working with the Pro–Active Unit and prior drug investigations in the same area. The facts elicited on the remand indicated that the object was a "clear plastic-like bag" with other pink plastic baggies inside. It can reasonably be inferred that Officer Wilson saw that the container, previously described as a "light-colored" object, was indeed a clear plastic bag before removing it from the hole. At that point, before seizing and opening the bag, Officer Wilson was reasonably sure that the plastic bag contained cocaine packaged for street distribution.

In light of the totality of the circumstances that include Officer Wilson's experience, the information from the informant, the description of the "light-colored" object, and defendant's attempt to conceal the plastic bag from the police, it was entirely reasonable for Officer Wilson to conclude that that object was contraband and that defendant "was attempting to conceal narcotics." The clear plastic bag as a container was not the type of opaque container like the film cannister involved in *State v. Demeter, supra,* 124 *N.J.* at 383, 590 *A.*2d 1179, where there were no surrounding circumstances to support probable cause that the cannister contained drugs. Based on the totality of the circumstances presented to Officer Wilson, the present case is analytically indistinguishable from *Texas v. Brown, supra,* 460 *U.S.* at 733–35, 103 *S.Ct.* at 1539–40, 75 *L.Ed.*2d at 508–09. There, the officer seized an uninflated, opaque party balloon that he saw on the front seat of the defendant's car. *Id.* at 733, 103 *S.Ct.* at 1539, 75 *L. Ed.*2d at 508. The Supreme Court sustained the search under the plain view doctrine, noting that the balloon, innocuous in some

situations, was so probative of a criminal purpose that the police had probable cause to justify the warrantless seizure. *Id.* at 742–43, 103 *S.Ct.* at 1543–44, 75 *L.Ed.*2d at 513–15. The Court also observed that an officer's inability "to see through the opaque fabric of the balloon [was] all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents— particularly to the trained eye of the officer." *Ibid.* Similar to the officer in *Texas v. Brown*, who testified that, based on his experience, he was aware that narcotics were frequently packaged in such balloons, Officer Wilson testified that, based on his experience, he was convinced that the "light-colored" object contained drugs, and that crack cocaine was often packaged for distribution in plastic zip-lock baggies.

When the totality of the circumstances, including the facts that were known to Officer Wilson and the reasonable inferences he was permitted to draw from them in light of his experience and training, are " 'weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement,' " *Texas v. Brown, supra*, 460 *U.S.* at 742, 103 *S.Ct.* at 1543, 75 *L.Ed.*2d at 513–14 (quoting *United States v. Cortez*, 449 *U.S.* 411, 418, 101 *S.Ct.* 690, 695, 66 *L.Ed.*2d 621, 629(1981)), probable cause existed when Officer Wilson observed the clear plastic bag in the hole. Once he seized the clear plastic bag, and without opening it, he knew for sure that he had seized contraband. The outward appearance of the clear plastic bag gave the officer a degree of certainty that was functionally equivalent to the plain view of crack-cocaine itself. "[R]eviewing court[s] must give 'due weight' to factual inferences drawn by ... local law enforcement officers." *United States v. Arvizu*, —— *U.S.* ——, ——, 122 *S.Ct.* 744, 751, 151 *L.Ed.*2d 740, 750 (2002) (explaining *Ornelas v. United States*, 517 *U.S.* 690, 699, 116 *S.Ct.* 1657, 1663, 134 *L.Ed.*2d 911, 920–21 (1996)). The totality of the circumstances here "warrant a man of reasonable caution in the belief that [the content of the clear plastic bag] may be contraband ... [and the constitution] does not demand any showing that such belief be correct or more

likely true than false." *Texas v. Brown, supra,* 460 *U.S.* at 742, 103 *S.Ct.* at 1543, 75 *L.Ed.*2d at 514 (citations and internal quotation marks omitted).

## E.

We conclude, therefore, that all three elements of the plain view doctrine were met in this case. Officer Wilson was lawfully on the porch of 695 Martin Luther King Boulevard. He did not know that evidence would be found in a hole by a porch post at this address, and thus discovered the evidence inadvertently. Finally, the incriminating nature of this "light-colored" object was immedi-ately · apparent based on probable cause after the object was visualized in the hole by Officer Wilson. Thus, we hold that the conduct of the police in seizing the clear plastic bag from the hole was reasonable under the plain view doctrine and violated neither the federal nor the New Jersey Constitution.

## III.

The judgment of the Appellate Division affirming the order of the Law Division suppressing the evidence is reversed. The matter is remanded to the Law Division for further proceedings consistent with this opinion.

LONG, J., dissenting.

I would affirm the suppression of evidence substantially for the reasons expressed by the Appellate Division. Like the Appellate Division, I would hold that the trial court properly concluded that the police lacked probable cause to arrest Drew Johnson thus defeating the State's claim that the search was incident to that arrest. I part company from my colleagues in connection with their additional determination that the plain view doctrine was a justification for the search.

I

The facts are straightforward. Based on an anonymous tip, from a person who identified himself as a local resident, that a black male named "Drew" was selling crack cocaine in small ziplock baggies at 695 Martin Luther King Boulevard, the police went to that location, which they characterized as being in a "high drug area." When they pulled up in front of the multi-family house, someone shouted, "Five–O", a well-known alert that police are present. The police shined a light on the porch of the house where they saw Johnson seated. One officer knew him from a prior drug·investigation. As the people on the porch began to move toward the entrance of the house, the police observed Johnson slowly place a light colored object near a support post for the porch roof in what the trial court found was *"not* a furtive movement." (Emphasis added). Officer Wilson ordered Johnson off the porch and directed him to assume the frisk position next to the police car. The officer then went onto the porch with his flashlight, shined it on the "light colored object" and retrieved it. The majority acknowledges that Officer Wilson did not testify that he could see the drugs inside the bag before he seized it.

II

The majority has not taken issue with the Appellate Division's conclusion that the police lacked probable cause to arrest Drew Johnson prior to the seizure of the drugs. It seems clear that at best, the police had a "reasonable suspicion" of Johnson's criminality, based on all the circumstances. Thus their brief detention of him was justified. *Terry v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968); *State v. Thomas,* 110 *N.J.* 673, 542 *A.*2d 912 (1988). I have doubts about the validity of the warrantless entry onto Johnson's porch after he was secured in the street. But even assuming, as the majority does, that such entry was lawful, if prior to that entry the police lacked probable cause to arrest Johnson based on the totality of the circumstances, it is inescapable that what occurred on the porch did not satisfy the probable cause

prong of the plain view doctrine. Officer Wilson could not see what was in the bag before he seized it. Thus, while he was on the porch, he had no more evidence in hand than he had had when he was on the street—at which point the majority has conceded no probable cause existed. To suggest that the probable cause prong of the plain view doctrine was met is logically out of synchronicity not only with the facts but with the remainder of the majority's holding.

This case would be entirely different if the officer had testified that when he got a closer look at the light colored object, he could see that it contained vials of pills or glassine envelopes of powder. It would also be different if the officer had testified that from his training or experience he knew, when he shined his flashlight on the light colored object, that it was of a type used by drug sellers transporting their wares. In those circumstances, a new fact would have been added to the probable cause calculus to change it from what it had been on the street. No such new fact is present here.

According to his own testimony, what the officer saw on the porch was essentially nothing more than what he had seen from the street—a closed container whose contents were hidden from his eyes. If he lacked probable cause to arrest Johnson, that closed container, which did not reveal its contents, could have provided no additional evidence to satisfy the probable cause prong of plain view and justify the seizure.

Separate and apart from probable cause, I disagree with the majority's holding that the inadvertency prong of the plain view doctrine was satisfied. Officer Wilson went onto the porch specifically to retrieve what he saw Johnson put down. No definition of inadvertency encompasses such a scenario. However, in light of the fact that it appears that in *Horton v. California*, 496 *U.S.* 128, 110 *S.Ct.* 2301, 110 *L.Ed.*2d 112 (1990), the Supreme Court eliminated the requirement of inadvertency under the Fourth Amendment, *U.S. Const.* amend. IV, that error is of no consequence. It would be important, however, if the gravamen of the majority

opinion is to reserve the inadvertency issue for resolution under the New Jersey Constitution. *N.J. Const.* art. I, ¶ 7.

For those reasons, I dissent.

*For reversal and remandment*—Chief Justice PORITZ, and Justices COLEMAN, LaVECCHIA and ZAZZALI—4.

*For affirmance*—Justices STEIN, LONG and VERNIERO—3.

*Opposed*—None.