**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3983-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRANDON A. BEVERLY, a/k/a
TERRE AKA STOKE,

    Defendant-Appellant.

_____

Submitted November 13, 2024 – Decided April 23, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 19-09-2304.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In this appeal, defendant Brandon Beverly challenges the denial of his motion to suppress evidence seized after a warrantless search of his apartment arising from a kidnapping. Defendant contends the trial court erred in finding the State established the plain-view doctrine as an exception to the warrant requirement. We conclude the State proved that the seizure of the handgun was lawful under the plain-view doctrine and within the scope of the search under the emergency-aid doctrine. Therefore, we affirm the denial of defendant's motion to suppress.

On the night of June 30, 2019, C.J. III (Calvin) was reported missing by his family.[1] Calvin's family member received a phone call from someone who requested to speak to Calvin's father. The caller demanded ten to fifteen pounds of marijuana in exchange for his son. Calvin's father recognized defendant's voice and told police that he knew the caller by a nickname and later identified defendant as the ransom caller based on a photograph. Moments after the call, the same family member received a text message telling the family not to contact

---

[1] We protect the identity of the victims by use of initials and pseudonyms. See R. 1:38-3(c)(12). We also use initials when describing the testimony or other involvement of persons contacted during the investigation to aid in protecting the victims' identity.

A-3983-22

the police and included a photograph of Calvin blindfolded with his hands bound.

Camden County Prosecutor's Office (CCPO) Detective Steven Besich[2] was assigned to the U.S. Marshals Fugitive Task Force (Fugitive Task Force), Camden Division, and assisted the Camden County Metro Police Department (CCMPD) Task Force in the investigation of Calvin's kidnapping. Over the course of one day, defendant and co-defendant Jalen Carr were identified as suspects based on the phone used for the ransom phone call and text message. The investigation also revealed the cell phone had been stolen during an armed robbery earlier that evening and the SUV identified in that robbery was registered to defendant's relative. Lastly, a female who had had been stopped while driving the SUV told officers defendant was in his apartment.

The investigation led the Fugitive Task Force to defendant's apartment in Woodbury. Besich testified that he led the entry team into the second-floor apartment in a "stack" formation, followed by Officer Baruch Zepeda, also assigned to the Fugitive Task Force. At the top of the stairs, Besich "broke" left and entered the bedroom and Zepeda "broke" right and entered another bedroom.

---

[2] The record contains various spellings of Besich's name. We use the spelling from the hearing transcript.

A-3983-22

Upon entering the bedroom, Zepeda immediately yelled "gun." Within seconds of hearing "gun," Besich entered the right bedroom and observed a black handgun on top of bedding on the top bunk bed.

A search warrant for the apartment was obtained and the handgun was secured the following morning. Officers also recovered a wallet containing the identification card of the armed robbery victims and flip-flops that were subsequently identified as belonging to Calvin. The next day, Calvin's body was found in an abandoned garage a short distance from the location of the armed robbery.

Defendant was subsequently indicted on charges of first-degree kidnapping, N.J.S.A. 2C:12-1(a); second-degree conspiracy to commit kidnapping, N.J.S.A. 2C:5-2; first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree murder, N.J.S.A. 2C:11-3(a)(1); first-degree robbery, N.J.S.A. 2C:15-1(a)(1); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2; second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and two counts of second-degree being a certain person not to have weapons, N.J.S.A. 2C:39-7(a). After defendant's motion to suppress the handgun was denied, defendant pled guilty to first-degree aggravated

A-3983-22

manslaughter, N.J.S.A. 2C:11-4(a), and was sentenced to a twenty-five-year prison term subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On this appeal, defendant presents the following argument for our consideration:

> Because the State failed to prove contraband was observed in plain view during a limited search of a residence for a person in need of emergency aid, this [c]ourt must reverse the denial of the defendant's motion to suppress all fruit.

We are unconvinced by this argument and affirm.

At the suppression hearing, the State presented one witness, Besich, because Zepeda was on indefinite military leave. Defendant did not testify or present any witnesses.

At the conclusion of the hearing, the trial court issued a written opinion denying defendant's motion, finding Besich's testimony "credible in all respects." Relying on Brigham City v. Stuart, 547 U.S. 398 (2006) and State v. Edmonds, 211 N.J. 117 (2012), the court found the State established both requirements for the emergency-aid doctrine by a preponderance of the evidence and found that the police lawfully entered defendant's apartment to search for Calvin.

The court, citing State v. Bruzzese, 94 N.J. 210, 237-38 (1983), cert. den., 465 U.S. 1030 (1984); State v. Johnson, 171 N.J. 192, 211 (2002); and State v. Mann, 203 N.J. 328, 341 (2010), also found the State established by a preponderance of the evidence the seizure of handgun was justified under the plain-view doctrine. The court reasoned that the officers "proceeded through only a portion of defendant's apartment and not having located [Calvin], the police acted squarely within the scope of their authority in conducting an emergency aid search for the victim by entering other rooms in the apartment." That authority "include[d] the bedroom in which Officer Zepeda observed what he immediately identified and announced as a gun." The court further reasoned, "there [was] no evidence the police already knew a handgun was inside the apartment, and Officer Zepeda and Detective Be[s]ich certainly had probable cause to associate a handgun located on a bunkbed with criminality." Simply stated, the "gun literally was in plain view" during the search of the bedroom. In a footnote, the court explained:

> "Even if there was evidence to support a contention the gun was observed only after police actually searched the bed by moving blankets on the bed, such a search would have been within the lawful scope of the effort to locate a kidnapping victim who could have been hidden under the blankets."

A-3983-22

On a motion to suppress, our standard of review is deferential. State v. Nyema, 249 N.J. 509, 526 (2022). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Therefore, we "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). By contrast, the determination of whether those facts established an emergency sufficient to satisfy the plain-view doctrine is a legal conclusion which we review de novo. See State v. Mellody, 479 N.J. Super. 90, 122 (App. Div. 2024).

Our review is guided by the overarching principle articulated in both the United States and New Jersey Constitutions, that protect against unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Thus, under both Consitutions, warrantless searches and seizures are presumptively unreasonable and invalid. See Goldsmith, 251 N.J. at 398; State v. Alessi, 240 N.J. 501, 517 (2020). To justify a warrantless search and seizure, "the State

bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement." State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (alterations in original).

It is well settled that the "[p]lain view [doctrine] is one of the recognized exceptions to the warrant requirement." State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023). Under the plain-view exception, the officer must be lawfully present in the viewing area when he or she observes and seizes the evidence, and the incriminating nature of the evidence to be seized must be immediately apparent to the officer. State v. Williams, 254 N.J. 8, 45 (2023) (quoting State v. Gonzales, 227 N.J. 77, 101 (2016)). To satisfy the "immediately apparent" prong, the officer must have probable cause to associate the item in plain view with criminal activity before seizing it. State v. Johnson, 171 N.J. 192, 213 (2002).

Here, defendant does not contest the lawfulness of the warrantless entry into defendant's apartment for the limited search for Calvin as a missing person under the emergency-aid doctrine. Rather, defendant challenges the seizure of the handgun based on a "preceding illegal search" and argues that it was the State's obligation to prove Zepeda observed the firearm in plain view without

searching for the handgun in a manner that exceed the limited scope of the emergency-aid doctrine. Defendant argues the State did not meet its burden because (1) the State failed to call Zepeda, and (2) Besich was not present in the bedroom to observe Zepeda's discovery of the handgun. Defendant offers two scenarios concerning Zepeda's actions. First, defendant posits Zepeda "pushed aside linen not capable of concealing a tied kidnapping victim." Second, Zepeda could have "illegally shifted a small portion of a sheet that absolutely could not have been [covering] a body." Therefore, according to defendant, the court "erroneously found 'a reasonable basis to conclude Officer Zepeda saw the gun almost immediately upon his entry into the bedroom . . . without any need for a search of the bed.'"

Defendant premises his argument based on State v. Hathaway and argues there was no testimony from Zepeda showing the search of the bedroom was within the lawful scope of the emergency-aid doctrine. 222 N.J. 453, 470 (2015). Defendant's reliance on Hathaway is misplaced, and we are unpersuaded by his speculative arguments. In Hathaway, the Court remanded the matter to the trial court for a new suppression hearing and to make factual findings on all the credible evidence regarding the emergency-aid doctrine. Id. at 479. The Court reasoned that at the suppression hearing, "the trial court made its decision

to suppress the handgun based on the State's presentation alone, relieving the defense of the need to call any witnesses." Ibid. Here, defendant had not subpoenaed or presented any witnesses.

Having reviewed the record and guided by the law, we are satisfied the State established the requirements under the plain-view doctrine. As conceded by defendant, Zepeda lawfully conducted an emergency aid search for the missing victim when he entered the bedroom where the gun was found, and we agree with the trial court that Zepeda immediately identified and announced there was a gun. There was no evidence the Fugitive Task Force knew a gun was inside of defendant's apartment. Contrary to defendant's argument, the record does not show that an illegal search preceded the seizure of the handgun.

We are satisfied that the trial judge properly determined the handgun seized from the top of the bunk bed was observed in plain view and did not exceed the scope of the search. See Hathaway, 222 N.J. at 470 (citing State v. Frankel, 179 N.J. 586, 599-600, cert. denied, 543 U.S. 876 (2004)). Therefore, the handgun was admissible under the plain-view doctrine. Accordingly, we affirm the denial of defendant's motion to suppress the handgun.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

10                                                      A-3983-22