NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1678-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

EDWARD PHITTS, a/k/a EDDIE PHITTS,
a/k/a EDUARDO PHITTS,

 Defendant-Appellant.

_____________________________________

 Submitted February 28, 2017 – Decided March 21, 2017

 Before Judges Ostrer and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Somerset County,
 Indictment No. 14-05-0277.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Theresa Y. Kyles, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Michael H. Robertson, Somerset County
 Prosecutor, attorney for respondent (James L.
 McConnell, Assistant Prosecutor, of counsel
 and on the brief).

PER CURIAM
 Following the denial of defendant's motion to suppress

evidence, he pled guilty to the single charge contained in the

indictment, third degree possession of a controlled dangerous

substance, N.J.S.A. 2C:35-10(a)(1), and was sentenced to five

years of special probation in drug court as an alternative to a

five-year custodial term. He appeals claiming the court erred by

denying his motion to suppress evidence. We disagree and affirm.

 I.

 The evidence at the suppression hearing showed that at 9:00

p.m. on March 6, 2014, defendant was the driver of a minivan in

Franklin Township. Police officers Michael Opaleski and Patrick

Clyne were in a patrol vehicle and observed the minivan stopped

in a no-parking zone and defendant speaking on a cell phone. The

officers activated their emergency lights, defendant drove the

vehicle a short distance, and the officers effectuated a stop of

defendant's vehicle.1

 The officers approached the vehicle on foot and began speaking

to defendant. As Opaleski stood outside the passenger side of the

vehicle, he observed what he characterized as the "corner of a wax

fold with a lettering or a stamp on it" in a cup in the vehicle's

1
 Defendant did not challenge the legality of the motor vehicle
stop before the trial court and does not make any claims here
related to the stop.

 2 A-1678-15T2
center console. Opaleski also observed defendant was breathing

heavily, his pupils were constricted, his hand movements were

slow, and he failed to make eye contact with the officer. Based

on his observations, Opaleski believed defendant was impaired.

 Defendant told the officers he did not have his driver's

license or any other form of identification, and his driving

privileges were suspended. The officers directed defendant to exit

the vehicle and he complied. Opaleski directed Clyne to conduct

a pat-down search of defendant to determine if he had any weapons.

Clyne did not discover any weapons during the pat-down.

 During the initial ninety seconds following defendant's exit

from the vehicle, and during Clyne's pat-down of defendant,

Opaleski advised defendant why he was stopped. Opaleski asked if

defendant was in possession of any weapons and if he knew about a

car-jacking that occurred the previous evening. During the pat-

down defendant "rolled his head backwards, or picked his head up,"

enabling Opaleski to see a whitish-yellow powder under defendant's

right nostril.

 Based on Opaleski's training and experience, he suspected the

powder to be a controlled dangerous substance, concluded defendant

used a controlled dangerous substance "very recently," and

suspected defendant was still in possession of a controlled

dangerous substance.

 3 A-1678-15T2
 Opaleski decided to place defendant under arrest for driving

while suspended, N.J.S.A. 39:3-40, and possession of drug

paraphernalia, N.J.S.A. 2C:36-1 and -2, based on the "totality of

circumstances," and what his "training and experience taught [him]

over the years." However, prior to formally placing defendant

under arrest, Opaleski searched defendant and seized nine packets

of heroin from his jacket pocket.

 Following Opaleski's decision to arrest defendant and as he

conducted the search, he continued asking defendant questions.2 He

asked if defendant had a drug habit. Defendant stated that "every

once in a while" he snorted "dope," which Opaleski understood to

be a reference to heroin. Defendant also admitted snorting dope a

short while before the motor vehicle stop but denied having any

dope in his possession because he had used it all.

 Defendant was subsequently asked if he needed anything

retrieved from the vehicle. Defendant told the officers he wanted

his reading glasses. Opaleski entered the vehicle to retrieve the

glasses and the wax fold in the console, observed a second cup

containing wax folds, and seized all of the wax folds.

2
 Opaleski testified he searched defendant during the period from
21:20:01 p.m. to 21:21:03 p.m., as reflected on the officer's
motor vehicle recording (MVR) that was admitted into evidence.
This is the period during which he asked defendant questions
concerning his drug use and possession of a controlled dangerous
substance.

 4 A-1678-15T2
 Following the suppression hearing, the judge issued a written

decision denying defendant's motion. The judge found Opaleski, the

only witness who testified at the hearing, to be credible. She

also found there was probable cause for defendant's arrest

supporting Opaleski's search of defendant incident to the arrest.

The judge further found the wax folds in the vehicle were properly

seized because they were in plain view.

 On appeal, defendant makes the following arguments:

 POINT I

 ALL EVIDENCE SEIZED IN THIS MATTER SHOULD HAVE
 BEEN SUPPRESSED BECAUSE THE OFFICER'S SIGHTING
 OF A "WAX FOLD" IN THE MINIVAN WAS NOT SHOWN
 TO HAVE BEEN ASSOCIATED WITH CRIME AND,
 THEREFORE, WAS NOT A PLAIN VIEW OBSERVATION;
 THE PAT-DOWN OF [DEFENDANT] VIOLATED HIS
 FOURTH AMENDMENT RIGHTS; AND [DEFENDANT'S]
 ADMISSION THAT HE USED DRUGS WAS ACQUIRED BY
 WAY OF INTERROGATION THAT VIOLATED HIS FIFTH
 AMENDMENT RIGHTS.

 A. Introduction[.]

 B. The sighting of the corner of a "wax fold"
 was not shown to have been a "plain view"
 observation[.]

 C. The pat-down performed in this matter
 lacked justification, and any evidence
 acquired as a result of that pat-down should
 have been suppressed.

 D. The admission of recent use of drugs was
 made during an unconstitutional
 interrogation, and any evidence found as a
 result of that interrogation should have been
 suppressed.

 5 A-1678-15T2
 [E.] The seizure of the "wax folds" from the
 minivan was the result of a pretextual search,
 the fruits of which should have been
 suppressed.
 II.

 Our review of the denial of a suppression motion is limited.

See State v. Handy, 206 N.J. 39, 44 (2011). "We must uphold a

trial court's factual findings at a motion-to-suppress hearing

when they are supported by sufficient credible evidence in the

record," State v. Hathaway, 222 N.J. 453, 467 (2015), and will

"not disturb the trial court's findings merely because '[we] might

have reached a different conclusion' . . . or because 'the trial

court decided all evidence or inference conflicts in favor of one

side' in a close case," State v. Elders, 192 N.J. 224, 244 (2007)

(quoting State v. Johnson, 42 N.J. 146, 162 (1964)). It is only

where we are "thoroughly satisfied that the finding is clearly a

mistaken one and so plainly unwarranted that the interests of

justice demand intervention and correction [that we will] appraise

the record as if [we] were deciding the matter at inception and

make [our] own findings and conclusions." Johnson, supra, 42 N.J.

at 162.

 We do not owe deference to a trial court's "interpretation

of the law," and such issues are reviewed de novo. Hathaway, supra,

222 N.J. at 467. "A trial court's interpretation of the law . . .

 6 A-1678-15T2
and the consequences that flow from established facts are not

entitled to any special deference." State v. Lamb, 218 N.J. 300,

313 (2014).

 Here, we consider the court's determination that the

warrantless searches of defendant and his vehicle were lawful. The

United States and New Jersey Constitutions guarantee the right "of

the people to be secure in their persons, houses, papers, and

effects against unreasonable searches and seizures[.]" U.S. Const.

amend. IV; N.J. Const. art. I, ¶ 7. The Fourth Amendment and

Article 1, paragraph 7 of the New Jersey Constitution both

"require[] the approval of an impartial judicial officer based on

probable cause before most searches may be undertaken." State v.

Patino, 83 N.J. 1, 7 (1980).

 Warrantless searches are presumed invalid. State v. Gamble,

218 N.J. 412, 425 (2014). "Any warrantless search is prima facie

invalid, and the invalidity may be overcome only if the search

falls within one of the specific exceptions created by the United

States Supreme Court." State v. Hill, 115 N.J. 169, 173 (1989).

The State has the burden of proving the existence of an exception

by a preponderance of the evidence. State v. Amelio, 197 N.J. 207,

211 (2008), cert. denied, 556 U.S. 1237, 129 S. Ct. 2402, 173 L.

Ed. 2d 1297 (2009).

 Defendant first challenges the search of his person, arguing

 7 A-1678-15T2
Opaleski's initial observation of the wax fold in the console was

insufficient to permit its seizure under the plain view exception

to the warrant requirement. Under the plain view exception, an

officer may seize evidence without a warrant "if the officer is

'lawfully . . . in the viewing area' when he [or she] discovers

the evidence, and it is immediately apparent the object viewed is

'evidence of a crime, contraband, or otherwise subject to

seizure.'" State v. Keaton, 222 N.J. 438, 448 (2015) (quoting

State v. Johnson, 171 N.J. 192, 206-07 (2003)). "The officer must

discover the evidence 'inadvertently,' 'meaning that [the officer]

did not know in advance where evidence was located nor intend

beforehand to seize it.'"3 Johnson, supra, 171 N.J. at 206 (quoting

State v. Bruzzese, 94 N.J. 210, 236 (1983), certif. denied, 465

U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984)).

 Defendant argues Opaleski's observation was insufficient to

support a plain view seizure of the wax fold because there was

nothing about the wax fold making it immediately apparent that it

constituted evidence of a crime. Defendant also reasons that

Opaleski could not properly rely on his observation of the wax

3
 In State v. Gonzales, 227 N.J. 77, 101 (2016), the Court
announced a "new rule of law" eliminating the requirement that the
State prove evidence was discovered inadvertently to support a
warrantless search under the plain view exception to the warrant
requirement. The Court's decision applies prospectively and
therefore the new standard is not applicable here. Ibid.

 8 A-1678-15T2
fold to support his arrest and search of defendant because it was

unlawful for Opaleski to seize the wax fold under the plain view

exception.

 We reject defendant's argument because even assuming

Opaleski's observation of the wax fold in the console was

insufficient to permit a seizure under the plain view exception,

there was no seizure of the wax fold prior to Opaleski's search

of defendant. Thus, the search was not based on an illegal seizure

of any evidence and there was no basis to suppress the heroin

found in his pocket as the fruit of the poisonous tree. See Wong

Sun v. United States, 371 U.S. 471, 484-85, 83 S. Ct. 407, 415-

16, 9 L. Ed. 2d 441, 453-54 (1963).

 Moreover, it was immediately apparent the wax fold evidenced

the commission of an offense. Opaleski was an experienced police

officer who received training concerning controlled dangerous

substances and participated in over two hundred cases involving

the use and sale of heroin. He explained that heroin is commonly

packaged in bundles, consisting of ten "deck[s]," "bag[s]," or

"fold[s]," which are "individually packaged items . . . of heroin."

Thus, his observation of the wax fold in the center of defendant's

console made it readily apparent that it was evidence of a crime.

 Defendant argues Opaleski lacked probable cause to conclude

the wax fold was evidence of an offense because it "appear[ed]

 9 A-1678-15T2
intrinsically innocent." State v. Demeter, 124 N.J. 374, 383

(1991). Defendant asserts that Opaleski's "subjective beliefs"

that the wax fold was drug paraphernalia were "not dispostive."

Id. at 384.

 The circumstances here are unlike those presented in Demeter

where the Court determined that an officer's observation of a

thirty-five-millimeter film canister in a vehicle, which he

suspected contained a controlled dangerous substance, did not

support a finding of probable cause. Ibid. The Court found the

canister "was intrinsically innocent" and there were no other

"objective factors that would lead any officer with similar

training and experience reasonably to conclude that drugs were in

the canister." Id. at 383.

 In Texas v. Brown, 460 U.S. 730, 739, 103 S. Ct. 1535, 1542,

75 L. Ed. 2d 502, 512 (1983), the Supreme Court sustained the

seizure of a balloon from a motor vehicle under the plain view

doctrine. The Court found it was immediately apparent to the

officer that the balloon constituted evidence of crime because he

knew from his training and experience "that narcotics frequently

were packaged in [similar] balloons" and because there were other

circumstances supporting the officer's conclusion. Id. at 734, 103

S. Ct. at 1539, 75 L. Ed. 2d at 508; see also Johnson, supra, 171

N.J. at 219 (holding that criminal nature of container is

 10 A-1678-15T2
immediately apparent where "outward appearance of the clear

plastic bag gave the officer a degree of certainty that was

functionally equivalent to the plain view of crack-cocaine

itself").

 Opaleski had training and experience in heroin

investigations, and explained that folds are commonly used to

package small quantities of heroin. There was no evidence the wax

fold Opaleski first observed had a use for any purpose other than

the packaging of a controlled dangerous substance. Moreover,

unlike in Demeter, "where there were no surrounding circumstances

to support probable cause that the canister contained drugs,"

Johnson, supra, 171 N.J. at 218 (distinguishing Demeter, supra,

124 N.J. at 383), Opaleski was trained in the symptomology of drug

usage, and concluded defendant was impaired based on his

observations of defendant's eyes and physical movements. His

observations and conclusion supported his determination that the

wax fold, which was in the center console next to the driver's

seat of the vehicle, was drug paraphernalia. Based on his

experience and "the facts that were known to" Opaleski, the

"[t]otality of the circumstances" provided "probable cause to

associate the [wax fold] with criminal activity," Brown, supra,

460 U.S. at 741-42, 103 S. Ct. at 1543, 75 L. Ed. 2d 513 (quoting

 11 A-1678-15T2
Payton v. New York, 445 U.S. 573, 587, 100 S. Ct. 1371, 1380, 63

L. Ed. 2d 639, 651 (1980)).

 Defendant was arrested and searched in part because Opaleski

believed defendant committed the offense of possession of drug

paraphernalia. A person commits the offense when they "use, or []

possess with intent to use, drug paraphernalia to . . .

pack . . . store, contain, [or] conceal . . . a controlled

dangerous substance." N.J.S.A. 2C:36-2. Drug paraphernalia

includes materials "used or intended for use in packaging . . .

controlled dangerous substances," including "envelopes and other

containers." N.J.S.A. 2C:36-1(i). We are satisfied Opaleski's

observations of the wax fold, defendant's eyes and physical

movements, and the location of the wax fold next to an apparently

impaired defendant, provided probable cause to believe that

defendant committed an offense under N.J.S.A. 2C:36-2.

 Opaleski did not immediately seize the wax fold. Opaleski

ordered defendant out of the car, subsequently searched him, and

found heroin in his jacket pocket. The State asserts, and the

court found, that the search of defendant was incidental to his

lawful arrest. We agree.

 An officer may properly search an individual who has been

lawfully placed under arrest. Chimel v. California, 395 U.S. 752,

762-63, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685, 694 (1969); State

 12 A-1678-15T2
v. Minitee, 210 N.J. 307, 318 (2012); State v. Eckel, 185 N.J.

523, 528 (2006); State v. Pierce, 136 N.J. 184, 213-14 (1994).

Probable cause for an arrest "exists where the facts and

circumstances within . . . [the officers'] knowledge and of which

they had reasonably trustworthy information [are] sufficient in

themselves to warrant a [person] of reasonable caution in the

belief that an offense has been or is being committed." State v.

O'Neal, 190 N.J. 601, 612 (2007) (alterations in original) (quoting

State v. Moore, 181 N.J. 40, 45-46 (2004)). We consider the

"totality of the circumstances" in determining if an officer had

probable cause to make an arrest. Ibid.

 We are convinced the evidence amply supports the court's

determination there was probable cause to arrest defendant for

driving while suspended,4 N.J.S.A. 39:3-40, and possession of drug

paraphernalia, N.J.S.A. 2C:36-2, prior to Opaleski's search of

defendant. Defendant admitted his license was suspended and, as

noted, Opaleski's observations of the defendant and the wax fold

4
 A search incident to a lawful arrest generally cannot be based
on a charge of driving without a license because "driving without
a license, without more, would not constitute sufficient grounds
for a custodial arrest." State v. Lark, 163 N.J. 294, 296 (2000).
Here, we need not consider whether defendant's arrest for driving
while suspended alone would provide a sufficient basis for an
arrest permitting a search incident to the arrest because Opaleski
had probable cause to arrest defendant for the commission of an
offense under N.J.S.A. 2C:36-2.

 13 A-1678-15T2
provided probable cause for defendant's arrest for possession of

drug paraphernalia.

 It is of no moment that the search occurred prior to

defendant's formal arrest. "As long as the right to arrest pre-

existed the search, . . . the search will not be invalidated

'simply because in precise point of time the arrest does not

precede the search.'" O'Neal, supra, 190 N.J. at 614-15 (quoting

State v. Doyle, 42 N.J. 334, 343 (1964)). The record shows Opaleski

had the right to arrest defendant for possession of drug

paraphernalia before defendant exited the vehicle. The fact that

Opaleski did not immediately arrest defendant, or obtained

additional information prior to the arrest, did not affect the

validity of the search. It is the "right to arrest," rather than

the actual arrest that "must pre-exist the search." Ibid. (quoting

Doyle, supra, 42 N.J. at 342). Opaleski had probable cause to

arrest defendant for possession of drug paraphernalia prior to the

search and, as a result, his search of defendant was incident to

a lawful arrest. See State v. Dangerfield, 171 N.J. 446, 460 (2002)

(finding the police have authority to arrest for disorderly persons

offenses committed in their presence).

 Defendant contends Opaleski's observation of the powder under

defendant's nose was the result of an improper pat-down. See,

e.g., State v. Casimono, 250 N.J. Super. 173, 178-80 (App. Div.

 14 A-1678-15T2
1991) (finding a pat-down search was not justified where defendant

was charged with motor vehicle offenses and there was no reasonable

suspicion he was armed), certif. denied, 127 N.J. 558 (1992).

Defendant claims Opaleski relied on the observation in deciding

to arrest defendant, and his reliance on the observation rendered

the arrest and subsequent search unlawful. We are not persuaded

by defendant's claim because even assuming Opaleski saw the powder

as a result of an unlawful pat-down and relied upon it in part to

arrest and search defendant, there was independent evidence prior

to the pat-down sufficient to arrest defendant for possession of

a drug paraphernalia. See O'Neal, supra, 190 N.J. at 618 (finding

harmless error in court's denial of motion to suppress statements

made in violation of Miranda rights because there was probable

cause for a search independent of the statements).

 We also reject defendant's argument that the arrest and search

were unlawful because they were based on defendant's statements,

which were made in the absence of any Miranda5 warnings and in

response to Opaleski's questions. The evidence shows Opaleski

could not have considered any statements made by defendant in his

decision to make an arrest and conduct the search. Opaleski began

5
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966)

 15 A-1678-15T2
the search before asking defendant any questions about drug use

and prior to any of defendant's admissions concerning his drug use

that evening.6 In addition, even if Opaleski had considered any

statements made by defendant in the absence of required Miranda

warnings, there was probable cause for the arrest and search before

defendant left the vehicle. Thus, the validity of defendant's

arrest and search were not dependent upon any statements he made

about drug use in response to Opaleski's questions.7 Ibid.

 Defendant last argues the court erred in denying the motion

to suppress the wax folds Opaleski seized from the vehicle

following defendant's arrest. Defendant claims there was no reason

to impound the vehicle and therefore Opaleski's entry into the

vehicle to retrieve defendant's glasses was improper. We find no

merit in defendant's contention.

6
 Opaleski testified he began to search defendant at 21:20:01 p.m.,
as shown on the MVR. Prior to that time, Opaleski had not asked
defendant any questions about drug use. Opaleski asked the first
question about drug use at 21:20:01 p.m., after he decided to
arrest defendant and as he commenced the search.
7
 There is no support in the record for the court's finding that
"it was not until after [d]efendant admitting to having 'dope' in
his possession, that the officers searched his person for the
controlled dangerous substance." There was no discussion of drugs
with defendant until the search began and defendant did not
acknowledge he possessed any drugs until after the search revealed
the nine folds of heroin found in his pocket.

 16 A-1678-15T2
 Although Opaleski entered the vehicle in part to obtain

defendant's glasses at defendant's request, he did so in order to

seize the wax fold he had observed in plain view. He was entitled

to enter the vehicle for that purpose. See Brown, supra, 460 U.S.

at 739, 103 S. Ct. at 1542, 75 L. Ed. 2d at 512 (finding that an

officer is entitled to immediately seize evidence of an offense

in plain view); State v. Mann, 203 N.J. 328, 341 (2010) (holding

seizure of a controlled dangerous substance from an automobile was

proper where plain view exception to the warrant requirement

applied). While Opaleski was lawfully in the vehicle to seize the

wax fold he first observed, he saw for the first time additional

folds, which he recognized as drug paraphernalia. The evidence

therefore supports the court's conclusion that all of the folds

were properly seized under the plain view exception to the warrant

requirement.

 Affirmed.

 17 A-1678-15T2