NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3221-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MAURICE E. JOHNSON,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 3, 2025**
>
> **APPELLATE DIVISION**

Argued April 29, 2025 – Decided June 3, 2025

Before Judges Sumners, Susswein and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 23-12-0939.

John P. Morris argued the cause for appellant.

Kim Latonya Barfield, Assistant Prosecutor, argued the cause for respondent (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Kimberly P. Will, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

On leave granted by our Supreme Court, defendant Maurice E. Johnson appeals from a November 10, 2023 Law Division order denying his motion to suppress evidence and a May 30, 2024 order denying his motion for reconsideration. This case presents a novel constitutional question arising from the execution of a communications data warrant (CDW) that authorized the surreptitious installation of a global positioning system (GPS) device on a vehicle to electronically monitor its movements. The State Police initially intended to install the device while the vehicle was on a public street or in a public parking lot. When that failed, the State Police decided to install the device while the vehicle was parked on defendant's driveway. The CDW did not expressly authorize entry onto the driveway. Nor did the State Police seek prior judicial authorization to enter onto defendant's residential property when they abandoned the plan to install the device on a public street or parking lot.

We are tasked in this appeal to decide whether the State Police violated defendant's rights under the Fourth Amendment and its state counterpart, Article I, Paragraph 7 of the New Jersey Constitution, when they went on defendant's driveway to perform the installation. To answer that ultimate question, we consider a series of interrelated sub-questions: Was the portion of the driveway where the subject vehicle was parked part of the "curtilage" of defendant's home and thus protected under the Fourth Amendment and Article

2

I, Paragraph 7? If so, did the State Police have an "implied license" to step onto the private driveway and proceed to the subject vehicle to install the GPS device? If they did not have such license, did the CDW itself implicitly authorize their entry? Or were they required to obtain express judicial authorization to enter onto defendant's residential property, either in the initial CDW application or by going back to the judge who issued the CDW when they abandoned their initial plan to install the device while the vehicle was parked on public property?

Because this case raises several discrete issues that must be resolved in sequence, we proceed step-by-step in our analysis to build the foundation for our ultimate conclusion. We first acknowledge what is not disputed in this appeal. Defendant does not challenge the issuance of the CDW, but rather its execution. The law is well-settled that the Fourth Amendment and Article I, Paragraph 7 can be violated by the manner in which a duly issued search warrant[1] is executed. See e.g., State v. Caronna, 469 N.J. Super. 462, 495, 499 (App. Div. 2021) (diverging from United States Supreme Court precedent by invoking the exclusionary rule when police unreasonably and unjustifiably ignored the search warrant's requirement that they knock and announce their

---

[1] A CDW is "the equivalent of a search warrant." State v. Lunsford, 226 N.J. 129, 133 (2016).

presence before entering the dwelling). We must, therefore, address whether the State Police exceeded the scope of the CDW when they chose to install the GPS device while the subject vehicle was parked on defendant's private property.

After reviewing the record in light of the parties' arguments and the governing legal principles, we are constrained to reverse the denial of defendant's suppression motion. The governing case law makes clear that the police entry onto the driveway in these circumstances constitutes a search regulated by the United States and New Jersey Constitutions. The top of the driveway where the subject vehicle was parked was part of the curtilage of defendant's home and was thus constitutionally protected—a conclusion the State does not dispute.[2]

Furthermore, the State failed to establish that the State Police had "implied license" under the curtilage doctrine to approach the vehicle to install the GPS device. State and federal curtilage jurisprudence recognizes that visitors, such as delivery persons, may be privileged to enter onto private residential property and follow a path leading to the home's front entrance.

---

[2] We note that in its appeal brief, the State does not clearly acknowledge whether the driveway was within the home's curtilage. At oral argument, however, the State acknowledged that the "entire driveway" was included within the curtilage, but maintained the State Police were nonetheless permitted to enter onto the driveway to execute the CDW.

But here, the record shows that the State Police turned away from the pathway leading to the front door as they proceeded to the subject vehicle to attach the device. Furthermore, the implied license caveat to the curtilage doctrine would not, in any event, authorize police to enter the driveway for the purpose of installing a GPS device, since that is not something visitors would be expected or permitted to do.

Nor has the State established that the CDW itself authorized entry onto defendant's residential premises. Under the plain language of the Fourth Amendment and Article I, Paragraph 7, a search warrant must particularly, not impliedly, describe the place to be searched. Here, the CDW did not mention the driveway much less expressly designate it as a place to be entered/searched. We emphasize this is not a situation where police had a warrant to enter the house and the only question is whether the driveway falls within the geographic scope of the warrant's search authorization. While the CDW expressly authorized a police incursion upon the subject vehicle, it did not authorize an incursion on defendant's residential property. That distinction is critical to our analysis. It is well-settled that homes are afforded greater protection against unreasonable searches and seizures than automobiles. See State v. Witt, 223 N.J. 409, 422 (2015).

We thus hold that the entry onto the top portion of defendant's driveway in these circumstances not only constitutes a search, but a warrantless one. Applying the bedrock principle that warrantless searches are presumptively unreasonable, we conclude that the State Police were obligated either to request judicial authorization to enter onto defendant's residence as part of the initial CDW application, go back to the issuing judge to obtain express authorization once the initial installation plan failed, or establish that a recognized warrant exception applies.

We emphasize that it does not matter that the State Police did not appreciate the constitutional significance of entering onto defendant's residential property. Nor does it matter that they were acting in good faith based on the assumption they were authorized to install the GPS device at any place of their choosing, including defendant's private driveway. There is no good faith exception in this State. See State v. Novembrino, 105 N.J. 95, 153 (1987).

## I.

We discern the following pertinent facts from the record, focusing on the events leading to the issuance and execution of the CDW. On January 27, 2022, a Superior Court judge issued two CDWs authorizing police to install

and monitor in real time GPS devices on a Jeep Grand Cherokee[3] and a Chevrolet Tahoe. Both vehicles were registered to defendant's mother but defendant primarily used them.

The CDW states in relevant part:

> IT IS FURTHER ORDERED that the signal monitoring and tracking device shall be installed on the subject automobile as soon as is practicable within ten (10) days from the issuance hereof in a [manner] to be determined by the executing officers so as to minimize the chances of detection of the device by the person whose vehicle is the subject of this warrant. Further, you are to make a report to me of the termination of monitoring within ten (10) days of the date that monitoring of the GPS device terminates hereunder or under any extension hereto[.]

The CDW additionally states that:

> IT IS FURTHER ORDERED, that authorization is granted to enter, access, or otherwise exercise control over the subject vehicle, with any and all necessary and proper assistance, for the purpose of maintaining, replacing, repairing, enhancing, moving, or removing the said devices and/or downloading data; and

> IT IS FURTHER ORDERED that authority is hereby granted to monitor the device in real time as an aid to physical surveillance until the authorized objectives are attained but in no event shall the monitoring of the said device exceed thirty (30) days from the date of installation of the said unit unless the Court extends the termination date. The signal

---

[3] A GPS device was never installed on the Jeep Grand Cherokee.

A-3221-23

monitoring and tracking device may be operated and monitored twenty-four hours a day, seven days a week, Sunday through Saturday, inclusive. Once installed, the signal monitoring and tracking device will ascertain and record the vehicle's location into it's memory.

. . . .

IT IS FURTHER ORDERED that authorization is granted to remove the signal monitoring and tracking device by employing the surreptitious means delineated herein within a reasonable time period after the end of the authorized period of use.

The judge issued a similar CDW on February 25, 2022 to track the Tahoe starting March 2, 2022 for no more than an additional thirty days.

The CDW noted the address of the registered vehicle owner but did not describe the residence. On March 23, 2022, a different judge issued a warrant to search defendant's residence.[4]

In June 2022, defendant was charged by indictment with various drug and weapons offenses.[5] In December 2023, the grand jury returned a superseding indictment charging defendant with first-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(b)(1); second-degree possession of a weapon while committing a CDS

___

[4] That search is not before us in this interlocutory appeal.

[5] We note defendant has not been tried and is presumed innocent.

offense, N.J.S.A. 2C:35-5(b)(3) and N.J.S.A. 2C:39-4.1(a); third-degree possession of prohibited weapons and devices without serial number, N.J.S.A. 2C:9-3(n); fourth-degree possession of weapons and devices, N.J.S.A. 2C:39-3(j); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and second-degree possession of a weapon by a convicted person, N.J.S.A. 2C:39-7(b)(1).

Defendant filed two suppression motions. In February 2023, he filed a motion to suppress evidence seized during the execution of the search warrant at his home. He filed the second suppression motion on March 15, seeking to suppress the data collected from the GPS device installed on the Tahoe. That is the motion now before us.

The motion court conducted hearings on both motions on October 3 and November 1, 2023. The court granted defendant's motion to suppress evidence recovered from the search of his home, finding the State Police violated the "knock and announce" requirement set forth in the warrant. It denied defendant's motion to suppress the evidence obtained from the GPS device.

On March 8, 2024, defendant filed a motion for reconsideration of the denial of his motion to suppress the GPS data. On May 30, the court denied the motion for reconsideration.

We denied defendant's motion for leave to appeal the interlocutory orders pertaining to the GPS data. Defendant then sought leave to appeal to the New Jersey Supreme Court. On October 1, 2024, the Court remanded for us to consider defendant's interlocutory appeal on the merits.

II.

The following pertinent facts were adduced at the hearing on the motion to suppress the GPS evidence. The lead State Police detective on this case was the State's sole witness to testify about the CDW application and execution. He was responsible for securing the CDWs and drove the State Police Technical Emergency and Mission Specialist (TEAMS) unit to defendant's residence on the night they attached the GPS device.[6]

The State Police narcotics trafficking investigation targeted against defendant spanned from December 20, 2021 through March 2022. The lead detective testified that he conducted physical surveillance of the vehicle defendant was driving on approximately seven occasions but "didn't learn much" because defendant appeared to be doing "counter surveillance." To "protect the integrity of the investigation," the detective stopped following the vehicle and instead decided to apply for a CDW to electronically monitor the vehicle's movements in real time and to record and store the GPS data. He

---

[6] As noted, a GPS device was never attached to the Jeep Grand Cherokee.

"authored a [CDW application] . . . to put a GPS on [defendant's] vehicle, and then [the State Police] were able to follow him that way, where [they] saw a lot of short stops that were consistent with narcotic transactions."

The detective acknowledged that he did not include information in his CDW affidavit concerning entry onto the driveway to install the device. Rather, he sought authority to perform the installation "in the United States."

At a debriefing prior to executing the CDW, the detective informed the TEAMS unit that they would be affixing GPS devices to two vehicles parked in the driveway of defendant's residence. The State at the suppression hearing did not present evidence about the exact location of the Tahoe when the TEAMS unit installed the GPS device. Even after being shown photographs of the house and driveway, the detective testified on cross examination that he did not "know where the vehicles were positioned [on the driveway] when the GPS was applied."

Once the GPS device was installed on the Tahoe, State Police electronically monitored the vehicle for a total of forty days. The detective estimated this included over a hundred stops, revealing a pattern. The GPS tracking data led the State Police to a storage unit registered in defendant's

name.  There, they found CDS, handguns, and a substantial amount of money.[7] The contraband found in the storage unit provided the basis for the search warrant of defendant's home.

### III.

We next recount the pertinent findings made by the motion court pertaining to the motion to suppress the GPS data.  The court explained that the driveway is the only entrance to the house, stating "[s]eemingly everyone understood the layout of the house.  The house itself was a ranch-style house with a driveway.  There's a fence in the front yard, which means anybody that comes in or out of that, unless they jump the fence, have to come up the driveway."

The motion court next made findings concerning the GPS device, stating:

---

[7] The record before us does not include information regarding any warrant to search the storage unit and whether and to what extent the GPS data supported its issuance.  Cf. In Interest of J.A., 233 N.J. 432, 446-47 (2018) (noting that "the exclusionary rule applies to preclude the admission of evidence only when such evidence is suitably linked to the police misconduct. [] Therefore, when evidence is acquired by constitutionally valid means after initial unconstitutional action by law enforcement, courts must consider whether the exclusionary rule is applicable." (citing State v. Badessa, 185 N.J. 303, 311)). See also Caronna, 469 N.J. Super. at 500-06 (discussing the independent source, attenuated taint, and inevitable discovery exceptions to the exclusionary rule).

It was installed . . . on the car while it was in the driveway of the house. . . . And there was a second car that they had a warrant to put a tracker on, and they never did because apparently that vehicle was parked too close to the house. I think they feared that they would be seen by virtue of the surveillance cameras.

In explaining its decision to deny defendant's motion to suppress the GPS data, the motion court distinguished the United States Supreme Court's opinion in Collins v. Virginia, 584 U.S. 586 (2018), noting:

That case holds that a partially-enclosed section of an of a driveway where a motorcycle was parked constituted curtilage protected by the Fourth Amendment. The driveway enclosure was an area adjacent to the home, and to which the activity of home life extended.

. . . .

The important language of this case, . . . is the following. Nothing in the U.S. Supreme Court's case law suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant.

. . . .

In this case, the police had a warrant. Had the car been in the garage, a locked garage, or just a closed garage, I would hold that they[] violated the requirements. But in this case I find they did not.

The car was parked in the driveway. The driveway is not, strictly speaking, unlike the enclosure, presumably an enclosed carport in [Collins] which was how it was described, this is not an

13

enclosed driveway. There's no carport. There's no screening. It's just an open driveway. Anybody that needs to deliver a package would walk up or drive up the driveway.

If [defendant]'s mother hadn't paid the note on the car loan, the repo man would back the tow truck right up into that driveway, hook it up and take it away. The driveway is different from areas immediately adjacent to the home constituting curtilage. It's not a porch. It's not a deck. It's not even an enclosed area. . . . I would argue that there's an implied invitation to enter the driveway.

The motion court also distinguished the United States Supreme Court's decision in United States v. Jones, 565 U.S. 400 (2012), finding:

[T]his [case] is different from [Jones] in that it would appear, that unlike in Jones, the police in this case did not violate the terms and conditions of the search warrant previously granted, meaning they executed it within the appropriate time and within the appropriate jurisdiction. . . . I do not see a way to suppress that which was found at the . . . storage unit because the police complied with a lawfully issued GPS tracking order which was installed on [defendant]'s car while the car was [parked] in the driveway.

The motion court concluded:

So given the fact that there is a warrant in this case, it's not like [Collins] because it's not an officer just wandering up the driveway, going into the curtilage, taking a tarp off a motorcycle and checking its registration without a warrant. In this case[,] the police had a warrant. So suppression of the materials found in the storage unit will be denied.

14

At the reconsideration motion hearing, the court amplified its reasons for denying defendant's motion to suppress the GPS data, explaining:

> And I think that's why I came down on the side of the State as to the GPS, because of the implied invitation to go to the front door, which includes going up the driveway. And moreover, lots of people go up . . . driveways now. The Amazon delivery [person], DoorDash, the pizza delivery [person] . . . , UPS, the Postal Service if they need you to sign a green card. . . . [A]ll of those people are impliedly invited up the driveway and to the front door. So if the Constitution allows for the implied entry of the driveway and not to linger longer, was it not authorized then for the police to install the GPS while it was parked in the driveway?

## IV.

Defendant raises the following contentions for our consideration:

POINT I

The [m]otion [j]udge erred in his restrictive reading of . . . Jones, 565 U.S. [at] 400 . . . and its progeny [and related [s]tate constitutional principles] and the [f]ederal Supreme Court's complementary common law trespassing prohibitions to justify the State Police entry onto the premises (driveway, i.e. curt[i]lage) of [defendant's street address] to install a GPS tracking device on one of [defendant]'s vehicles:

> A. The [m]otion [j]udge confused and conflated the [s]tate and [f]ederal warrant requirement by equating a [CDW] authorizing installation of the GPS device on vehicles with a [s]earch [w]arrant authorizing entry onto and into the premises of a residence;

15

B.   The [m]otion [j]udge also erred in characterizing the driveway, although encompassed within the concept of curtilage, as an implied invitation to "[t]he UPS [person], the Amazon [person]" and law enforcement to "walk up that driveway." The [j]udge failed to appreciate the limits of the third-party intervention doctrine as a deviation during a "walk up that driveway" to then affix a GPS device on a vehicle by law enforcement exceeds any implicit invitation to the public to walk up and knock at one's door, see State v. Wright, 221 N.J. 456[,] . . . 477 (2015), Florida v. Jardines, [569 U.S. 1] (2013), Collins . . ., [584 U.S. at 586] . . . .

C.   The [m]otion [j]udge failed to address the additional "invasion of one's reasonable expectation of privacy" argument, based on Jones and Katz v. United States, . . . [389 U.S. 357] (1967).

POINT II

When, if ever, is a CDW sufficient to authorize entry onto private property [or into a home] to install a GPS tracking or recording device which does not invade one's reasonable expectation of privacy, and,

When, if ever, under federal and State constitutional protections, does a driveway adjacent to one's home allow unauthorized and warrantless entry for government agents to engage in any conduct other than that accorded to a "plumber, dinner guest, or a landlord," . . . Wright, 221 N.J. . . . [at] 477 . . . .

Defendant raises the following additional contentions in his reply brief:

POINT I

The State fails to appreciate this defendant's reliance on [f]ederal supremacy (i.e.[,] [Four]th Amendment) principles as well as New Jersey's acknowledgement of that [f]ederal authority, see State v. Ingram, 474 N.J. Super. 522 (App. Div. 2023).

POINT II

This [c]ourt need not, should it so determine, decide the [s]tate [c]onstitutional limits, expanded or same, as to the [f]ederal curtilage prohibition or the GPS parameters, impacting an individual's expectation of privacy.

POINT III

This [c]ourt should confirm that a CDW does not authorize entry onto private property, driveway, home or enclosed area, without a warrant specifically particularizing the basis for an entry upon a home or its curtilage as well as the parameters of a CDW.

V.

A.

We begin our analysis by acknowledging the foundational legal principles that govern this appeal, first with respect to general procedural matters. The standard of appellate review on a motion to suppress is deferential. State v. Nyema, 249 N.J. 509, 526 (2022). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021)

(alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)); see also State v. A.M., 237 N.J. 384, 395 (2019). We defer to those factual findings in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)); Nyema, 249 N.J. at 526. Accordingly, we "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction"'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)).

In contrast to the deference we owe to a trial court's factual and credibility findings, we review a trial court's legal conclusions de novo. State v. S.S., 229 N.J. 360, 380 (2017). Because questions of law "do not implicate the fact-finding expertise of the trial courts, appellate courts construe the Constitution, statutes, and common law de novo—with fresh eyes—owing no deference to the interpretive conclusions of trial courts, unless persuaded by their reasoning." Ibid. (internal quotation marks omitted) (quoting State v. Morrison, 227 N.J. 295, 308 (2016)).

In the present matter, we regard the motion court's conclusions regarding the scope of the curtilage doctrine to be legal conclusions to which we owe no special deference and view with a fresh set of eyes. See S.S., 229 N.J. at 380.

18

So too we regard the trial court's conclusions regarding the scope of the CDW, that is, what it authorized the State Police to do in regards to the driveway, to be a legal conclusion based on the language set forth within the four corners of that warrant.

B.

Turning to substantive legal principles, in nearly identical language, the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against unreasonable searches and seizures.[8] The Fourth Amendment and its New Jersey analog regulate a wide spectrum of police activities, reflecting the wide spectrum of rights guaranteed

---

[8] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Paragraph 7 of the New Jersey Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.

under those provisions. Each of these distinct rights have their own distinctive function, properties, and boundaries.

It is universally accepted, for example, that the Fourth Amendment protects a person's reasonable expectation of privacy. See Katz, 389 U.S. at 347. While the right of privacy is one of the cornerstones of the Fourth Amendment, the Constitution also protects the right to use and possess personal property, which is described in the constitutional text as "effects." The right associated with one's effects is burdened when police dispossess personal belongings. See United States v. Karo, 468 U.S. 705, 712 (1984) (holding that a "'seizure' of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property'" (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984))).

The Fourth Amendment right of privacy, meanwhile, is burdened when police expose to view (or to touch) some private place or activity, such as revealing an object that would not have been visible or otherwise detected but for a police officer's actions. This type of intrusion constitutes a "search." See Arizona v. Hicks, 480 U.S. 321, 324-25 (1987) (finding that an officer moving a stereo component to view its serial number constitutes a search under the Fourth Amendment).

Police officers during a single encounter may lawfully perform one or more constitutionally significant actions and yet perform another action that violates a person's constitutional rights. For example, as we have already noted, police conducting a search pursuant to a warrant may exceed its scope so that while the initial entry is lawful, the manner in which the search was conducted is unlawful. In this appeal, we consider whether the State Police lawfully executed the portion of the CDW that authorized the installation of the GPS device, focusing not on the act of installing the device on defendant's vehicle but on the act that immediately preceded installation, that is, approaching the subject vehicle as it was parked on the driveway of defendant's residence.

C.

Recently, our Supreme Court in Facebook v. State, 254 N.J. 329 (2023), acknowledged that some Fourth Amendment rights are enforced more rigorously than others. The Court embraced the commonsense principle that "[w]hen a lesser expectation of privacy is involved, or when a 'search involves a minimal intrusion' on an individual's privacy, the Fourth Amendment requires correspondingly fewer protections." Id. at 363. (quoting Winston v. Lee, 470 U.S. 753, 767 (1985)). The Court added, "[t]he same is true in reverse. More intrusive searches call for enhanced protections." Ibid.

As a general matter, police conduct constituting a "search" is subject to particularly close regulation. In the hierarchy of Fourth Amendment intrusions, in other words, a search is generally considered to be especially substantial, implicating the highest level of procedural safeguards and requiring the highest level of justification.[9] Consider, for example, that unless an arrest is made of a person in their own home, see New York v. Payton, 445 U.S. 573 (1980),[10] police may arrest a person without a warrant based on their own appraisal of probable cause, subject of course to post hoc judicial review. In sharp contrast, police may not conduct a search, whether of a person, vehicle, or home, without first obtaining a search warrant unless the State proves that an exception to the warrant requirement applies. As our Supreme

---

[9] We do not at all mean to suggest that other Fourth Amendment intrusions, such as motor vehicle stops, criminal suspicion stops, protective patdowns for weapons, and arrests, are insubstantial. Violations of the rights undergirding those police actions will also trigger the exclusionary rule. Rather, the point is that searches are sui generis among the universe of Fourth Amendment actions because they must be authorized in advance by a search warrant issued by a judge or else fall under one of the narrowly drawn exceptions to the warrant requirement such as search-incident-to-an-arrest, the automobile exception, consent, or exigent circumstances.

[10] In Payton, the Court held that an arrest cannot be effectuated in the arrestee's own home without an arrest warrant or a warrant exception, such as "hot pursuit" or some other variation of "exigent circumstances." 455 U.S. at 576, 598. Payton underscores the added protection accorded to homes, demonstrating that police activities that would be lawful if conducted in a public space may be deemed unlawful if conducted in a private residence.

22

Court stressed in <u>Witt</u>, "[o]ur jurisprudence under both constitutional provisions expresses a preference that police officers secure a warrant before they execute a search." 223 N.J. at 422 (citing <u>State v. Frankel</u>, 179 N.J. 586, 597-98 (2004)). That preference finds expression in the bedrock principle that warrantless searches are presumptively invalid. <u>See</u> <u>State v. Pineiro</u>, 181 N.J. 13, 19 (2004).

Furthermore, and of singular importance in this case, the rules governing searches are especially strict when the place to be entered and searched is a home. Our Supreme Court has emphasized that "[n]o principle is more firmly rooted in our Federal and State Constitutions than the right of the people to be free from unreasonable searches of their homes." <u>State v. Hemenway</u>, 239 N.J. 111, 116 (2019). As the United States Supreme Court put it, "when it comes to the Fourth Amendment, the home is first among equals." <u>Jardines</u>, 569 U.S. at 6. Thus, constitutional protection against unlawful searches and seizures applies "with maximum force to governmental intrusions into the home." <u>Ingram</u>, 474 N.J. Super. at 535 (citing <u>Jardines</u>, 569 U.S. at 6).

D.

Having established that searches are closely regulated, especially when a private residence is involved, we next consider what police conduct constitutes a search. It bears emphasis that a "search" is not just the act of looking for

objects suspected of being contraband, weapons, or other evidence of criminal activity. Entering a protected place also constitutes a search even before police begin hunting through a premises for evidence. The entry itself compromises the Fourth Amendment and Article I, Paragraph 7 interests people enjoy in that place. Cf. State v. Johnson, 476 N.J. Super. 1, 21 (App. Div. 2023) (explaining that the plain view exception to the warrant requirement does not authorize police to cross the threshold of a constitutionally protected place and does not apply, for example, when the officer has no right to enter a private residence even though the officer clearly sees contraband or other evidence inside (citing State v. Lewis, 116 N.J. 477 (1989))).

Jones underscores the expansive meaning of the term "search." In Jones, the United States Supreme Court addressed whether the attachment of a GPS device to an individual's vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets, constitutes a search within the meaning of the Fourth Amendment. 565 U.S. at 400. There, police installed a GPS device on the undercarriage of the defendant's vehicle while it was parked in a public parking lot. Id. at 403. Over the next twenty-eight days, the Government used the device to track the vehicle's movements. Ibid. The Court definitively held that "the Government's installation of a GPS device on

a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" Id. at 404.

To reach that conclusion, the Jones Court carefully traced the history of the Fourth Amendment, commenting that its Fourth Amendment jurisprudence was tied to common-law trespass,[11] at least until the latter half of the 20th century. Id. at 405. More recently, the Court noted, its cases "deviated from that exclusively property-based approach," ibid., relying also on the concept of reasonable expectation of privacy, id. at 406. See Katz, 389 U.S. at 347.

In Jardines, the United States Supreme Court reiterated and emphasized that reasonable expectation of privacy analysis "has been added to, not substituted for,' the traditional property-based understanding of the Fourth Amendment." 569 U.S. at 11 (quoting Jones, 565 U.S. at 407). The Jardines Court went on to explain that it is not necessary to consider whether the defendant had a reasonable expectation of privacy because "the Fourth Amendment's property-rights baseline . . . keeps easy cases easy." Ibid. "That the officers learned what they learned only by physically intruding on [the

---

[11] We note that the "trespass" the Court referred to in Jones was the physical intrusion into the defendant's vehicle, not his house, since the GPS device installation occurred while the subject vehicle was on public property. In the matter before us, we are dealing with a different form of trespass, a physical incursion onto a private residential driveway. This distinction is important because here, the CDW expressly authorized a physical incursion upon the subject vehicle but was silent regarding incursion upon the driveway.

defendant's] property to gather evidence is enough to establish that a search occurred."  Ibid.

E.

As we have noted, not all real property is treated as equal for purposes of Fourth Amendment analysis.  Homes are afforded special protection and thus the rules governing the entry/search of a home are especially strict and rigorously enforced.  That brings us to the concept of "curtilage," which is a long-standing Fourth Amendment principle that defines the geographic scope of the heightened constitutional protections associated with a home.  Those enhanced protections can extend outside the walls of a house, reaching not only porches, decks, and similar appurtenant structures but also walkways and driveways.  See State v. Domicz, 188 N.J. 285, 302 (2006) (citing State v. Johnson, 171 N.J. 192, 208-09 (2002)) ("Curtilage is land adjacent to a home and may include walkways, driveways, and porches.").

In Domicz, our Supreme Court explained:

> Whether the Fourth Amendment safeguards an area of curtilage depends on a consideration of various factors, including "'whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.'"  Johnson, 171 N.J. at 208-09 (quoting United States v. Dunn, 480 U.S. 294, 301

(1987)).[12]  An area within the curtilage to which the public is welcome, such as a walkway leading to an entrance to a home, is not afforded Fourth Amendment protection because the resident has given implicit consent to visitors to approach the home that way. See id. at 209.

[188 N.J. at 302.]

Importantly, reviewing courts must consider the nature of the police intrusion in determining the weight to be accorded to each of these factors. The "steps taken by the resident to protect the area from observation by people passing by," for example, is relevant only when the claimed Fourth

---

[12]  In Dunn, the United States Supreme Court held:

Drawing upon the Court's own cases and the cumulative experience of the lower courts that have grappled with the task of defining the extent of a home's curtilage, we believe that curtilage questions should be resolved with particular reference to four factors:  the proximity of the area claimed to be curtilage to the home, whether the area  is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

[480 U.S. at 301.]

Amendment intrusion is some form of visual surveillance.[13]  Because we are dealing in this case with a physical incursion by police, it does not matter whether defendant took steps to shield the cars parked on his driveway from being viewed from the street, sidewalk, or other public space.

We have no hesitancy in holding that when a person parks their car on their home driveway, especially at the top of the driveway far removed from the public street or sidewalk, they reasonably expect that passersby are not privileged to go onto the driveway to touch their vehicle even though there is no physical barrier preventing a visitor from walking up the driveway to reach the parked car.  And as we have noted, no privacy expectation analysis is needed when, as in this case, police physically enter onto residential property. See Jardines, 569 U.S. at 11.  We are thus persuaded that defendant did not give "implicit consent," Domicz, 188 N.J. at 302, to the State Police or anyone else to come onto his driveway and touch his parked vehicles.

The sharp distinction between physical entry and visual surveillance drawn in Jardines was amplified in Collins.  In Collins, the United States Supreme Court explained:

---

[13]  We expect that in the coming years, many curtilage-related questions will involve visual surveillance conducted by police with the aid of airborne drones.

The ability to observe inside curtilage from a lawful vantage point is not the same as the right to enter curtilage without a warrant for the purpose of conducting a search to obtain information not otherwise accessible. Cf. [California v. ]Ciraolo, 476 U.S. [207][] . . . 213-214[] [(1986)] (holding that "physically nonintrusive" warrantless aerial observation of the curtilage of a home did not violate the Fourth Amendment, and could form the basis for probable cause to support a warrant to search the curtilage). So long as it is curtilage, a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage.

[584 U.S. at 600.]

Collins amply demonstrates how our nation's highest Court broadly construes, and strictly enforces, the curtilage doctrine when a physical trespass is committed. The Court explained, "the Fourth Amendment's protection of curtilage has long been black letter law." Id. at 592. "At the [Fourth] Amendment's 'very core' stands 'the right of a [person] to retreat into [their] own home and there be free from unreasonable governmental intrusion.'" Ibid. (quoting Silverman v. United States, 365 U.S. 505, 511, (1961)). The Court further emphasized, "[t]o give full practical effect to that right, the Court considers curtilage—'the area "immediately surrounding and associated with the home"'—to be 'part of the home itself for Fourth Amendment purposes.'" Ibid. (quoting Jardines, 569 U.S. at 6).

The Collins Court specifically addressed whether the automobile exception to the Fourth Amendment permits a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein. 584 U.S. at 588. The Court resolutely concluded "[i]t does not." Ibid.

In Collins, the officer, while looking for a particular motorcycle, walked onto the defendant's residential property and up to the top of the driveway to where the motorcycle was parked. Id. at 589. The Court stated:

> As an initial matter, we decide whether the part of the driveway where Collins' motorcycle was parked and subsequently searched is curtilage. . . . A visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure and instead proceed up a set of steps leading to the front porch.
>
> [Id. at 593.]

Importantly for purposes of our analysis, the Court stressed, "[i]n physically intruding on the curtilage of Collins' home to search for the motorcycle, [the officer] not only invaded Collins' Fourth Amendment interest in the item searched, i.e., the motorcycle, but also invaded Collins' Fourth Amendment interest in the curtilage of his home." Id. at 594. It concluded, "[w]hen a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has

30

occurred.  Such conduct thus is presumptively unreasonable absent a warrant."

Id. at 593 (internal citation omitted).

F.

That is not to suggest that every step onto residential property is automatically unlawful.  The curtilage doctrine contemplates that in some circumstances, police are authorized to enter residential property under the theory of an "implied license."  In Jardines, the Court recognized that "[t]his implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave," 569 U.S. at 8, adding "precisely because that is 'no more than any private citizen might do.'" ibid. (quoting Kentucky v. King, 563 U.S. 452, 469 (2011)).

Furthermore, and of special importance to this appeal, the Jardines Court cautioned, "[t]he scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose."  Id. at 9.  Addressing the facts in that case, the Court stressed:

> But introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else.  There is no customary invitation to do that.  An invitation to engage in canine forensic investigation assuredly does not inhere in the very act of hanging a knocker.  To find a visitor knocking on the door is routine (even if sometimes unwelcome); to spot that same visitor

31

exploring the front path with a metal detector, or marching his bloodhound into the garden before saying hello and asking permission, would inspire most of us to—well, call the police.

[Ibid.]

In Ingram, we find further guidance on both the breadth of the curtilage doctrine when a physical incursion is involved and the narrow focus and boundaries of the implied license caveat. In that case, we considered whether a police officer, who walked onto the driveway of a home without permission or a warrant, was lawfully there when he observed illegal narcotics in a hole in the home's front porch. 474 N.J. Super. at 528. Judge Robert J. Gilson, writing for the court, carefully summarized state and federal precedents, holding that when a government official steps onto curtilage of a home without permission, an implied license, or a warrant, the official has begun to conduct a search, and that search will only be lawful if an exception to the warrant requirement applies. Id. at 522. The court also emphasized the restrictions on what constitutes an implied license, citing Jardines for the proposition that "[a]n officer may have permission to knock on the front door, but the scope of that license does not include an invitation to conduct a search." Id. at 536. Because the driveway in Ingram was part of the home's curtilage, the court concluded the officer conducted an unlawful search when he stepped off the sidewalk and walked onto the driveway. Id. at 528, 538.

## G.

We next apply the foregoing curtilage principles to the present facts. Because the State Police physically entered onto his driveway, defendant need not establish that he had a reasonable expectation of privacy. We are satisfied the driveway running adjacent to the house was part of the curtilage of his home, as the State now acknowledges. See note 2. Here, the State Police proceeded to the top of the driveway and away from the public street—an area that appeared to be protected by a home security camera and illuminated by a motion-detection activated flood light.

We are unpersuaded that this part of the driveway was unprotected from police intrusion because it was not enclosed or covered by a carport or similar structure. The fact the particular area where the subject vehicle was parked was not protected from the weather does not mean it was not protected from physical incursion under the United States and New Jersey Constitutions.

A key question, then, is whether the State Police entry onto that part of the driveway was permitted under the implied license caveat. We conclude the State's implied license argument fails for two independently sufficient reasons: first, the State Police exceeded the physical boundaries of any implied license, and second, they entered for a purpose beyond that which is permitted.

While the record is sparse concerning the installation of the GPS device, we are satisfied the State Police did not follow a direct pathway to the home's entrance. Rather, as in Collins, the officers "turned off" that route when they approached the subject vehicle, thus exceeding the spatial boundaries of any "customary invitation" that might be granted to a visitor such as a delivery person. See Jardines, 569 U.S. at 9.

We acknowledge that the motion court did not make a specific finding regarding where on the driveway the subject vehicle was parked when the State Police approached it to install the GPS device. As we have noted, the lead detective was not able to specify the exact location of the subject vehicle. We see no point, however, in remanding for further fact-finding by the motion court. The State had the burden of producing evidence at the suppression hearing to support its argument that the State Police were privileged under the implied license doctrine to approach the vehicle. Furthermore, the photographs of the driveway introduced into evidence clearly show the pathway from the edge of the driveway to the front door.[14]

As a general rule, we are reluctant to exercise any form of original jurisdiction. See State v. Santos, 210 N.J. 129, 142 (2012) (noting that

---

[14] We append photographs admitted at the suppression hearing to show the proximity of the top of the driveway to the house and to show that the walkway leading to the front entrance leads away from parking area.

34                                                    A-3221-23

original jurisdiction by an appellate court is disfavored where fact-finding is involved); see also Tomaino v. Burman, 364 N.J. Super. 224, 234-35 (App. Div. 2003) (opining that appellate courts should exercise original jurisdiction "only 'with great frugality'" (quoting In re Boardwalk Regency Casino License Application, 180 N.J. Super. 324, 334 (App. Div. 1981))). However, based on the discussion of the photographs at oral argument before us, we are satisfied that while a visitor could not reach the home's front entrance without walking up the driveway, as the motion court found, they could not touch the vehicle parked on the driveway without veering off the direct route to the front door unless the Tahoe was parked at the edge of the driveway, the portion closest to the home. The State failed to produce any such evidence.

Further, the motion court commented that the State Police likely did not install a GPS device on the Jeep Grand Cherokee because it was parked too close to the house, placing it in the home's surveillance camera's field of view which was seemingly equipped with motion sensor lights. That supports the conclusion the Tahoe was parked away from the walkway leading from the driveway to the front entrance. In these circumstances, we are satisfied the State failed to prove that the State Police stayed within the physical parameters of any license that might be granted to a visitor or delivery person.

35

Moreover, any such implied license would only have been to enter for the purpose of knocking on the front door or delivering a package. Collins, Jardines, and Ingram make clear that the purpose for entering upon protected curtilage matters when determining whether the implied license caveat applies. See Collins, 584 U.S. at 593, 596; Jardines, 569 U.S. at 9; Ingram, 474 N.J. Super. at 537, 539. Here, the purpose of the entry was to install a GPS device on a vehicle, i.e., to conduct a search, see Jones, 565 U.S. at 404, something a visitor would not do. The law is clear that entering protected curtilage for the purpose of conducting a law enforcement search falls outside the implied license exception. Ingram, 474 N.J. Super. at 536.

We note in this regard, at the risk of stating the obvious, the State Police were not delivering a package in the manner of a civilian delivery person. We recognize that the United States Postal Service or other delivery persons may occasionally leave packages at a place other than the front door, for example, to keep a parcel out of the weather. A homeowner might also give special delivery instructions to leave a package at a specified location to hide it from potential thieves. But ultimately, the purpose of such delivery would be to make the parcel available to the addressee, not to hide it from them. It strains credulity, moreover, to suggest a delivery person is authorized to conduct a

36

search. Simply put, installing a concealed GPS device is not something a visitor or delivery person would be expected and permitted to do.

Nor are we persuaded by the motion court's analogy to the repossession of a vehicle by a private loan collection agency. Indeed, if that example defines the scope of the implied license caveat, that exception would all but swallow the curtilage rule, allowing virtually any police intrusion. We note that private debt collectors, unlike police officers, are not subject to the Fourth Amendment. Cf. State v. Wright, 221 N.J. 456 (2015) (discussing the "third party intervention" doctrine, also referred to as the "private search" doctrine).

Even putting aside whether any such private repossession falls under the "customary invitation" recognized under the curtilage doctrine, see Jardines, 569 U.S. at 9, the State cites no published authority for the proposition that police may make a planned entry onto private residential property for the purpose of seizing and towing away a parked vehicle without first obtaining a search warrant to authorize any such planned removal, unless the State proves an exception to the warrant requirement applies, such as consent or exigent circumstances. We note that under New Jersey's automobile exception, the circumstances giving rise to probable cause must be spontaneous and unforeseeable which means the search may not be planned in advance. See State v. Smart, 253 N.J. 156, 174 (2023) ("It is certainly true that police

37

officers who possess probable cause well in advance of an automobile search should get a warrant." (citing Witt, 223 N.J. at 431)). Relatedly, the United State Supreme Court in Collins made clear the scope of the federal automobile exception extends no further than the automobile itself, and did not justify the officer's invasion of the curtilage. 584 U.S. at 588. "Nothing in this Court's case law," the Court explained, "suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant. Such an expansion would both undervalue the core Fourth Amendment protection afforded to the home and its curtilage and '"untether"' the [automobile] exception '"from the justifications underlying"' it." Ibid. (quoting Riley v. California, 573 U.S. 373, 386 (2014)). For these reasons, we do not believe the seizure of a vehicle by a private loan collection agency provides a useful model for what police would be allowed to do on a suspect's residential property.

In sum, we hold the State Police did not have implied license to approach the Tahoe to install the GPS device while it was parked near the top of defendant's driveway. We add that the physical incursion of the curtilage here was neither fleeting nor de minimus. We acknowledge that stepping a

few feet[15] onto protected curtilage may seem a minor Fourth Amendment intrusion when compared to the significant privacy intrusion that the CDW authorized, which was to electronically track defendant's movements for a protracted period of time. But executing a CDW is itself a significant event. Cf. State v. Mellody, 479 N.J. Super. 90, 117 (2024)[16] (noting that the officer's conduct "was not a fleeting or de minimus entry into defendant's home" when the officer "entered the garage to execute an investigative detention, that is, to seize defendant. . . . Even a brief entry of a home to effectuate the seizure of a resident is a significant constitutional intrusion"). Further, nothing in Jardines or Collins suggests that a curtilage violation may be disregarded because it involves trespassing only a short distance onto protected property.

We read these United States Supreme Court precedents as holding that any unlawful incursion of curtilage to conduct a search renders the ensuing

---

[15] Because the detective was not able to testify as to the exact location of the Tahoe, the record does not indicate exactly how far the State Police proceeded after turning off the direct route to the front entrance.

[16] In Mellody, we focused on the officer's entry into the defendant's garage. We noted that the defendant did not argue before the municipal court or Law

Division judge, or on appeal that the officer breached the curtilage of her home by entering onto her driveway to investigate suspected drunk driving. Id. at 111, n.2. We deemed the driveway curtilage issue to be waived, ibid., and thus had no occasion to analyze whether the officer violated the defendant's Fourth Amendment/Article I, Paragraph 7 rights before entering the garage to confront her.

search vulnerable to constitutional challenge. Furthermore, a constitutional violation—in this case physically intruding on curtilage—is not excused just because a court authorized police to conduct a different type of Fourth Amendment intrusion, that is, electronically tracking defendant's travels. We thus conclude that the State Police's entry onto defendant's driveway was a search that required a warrant or one of well-delineated exceptions to the warrant requirement.

## VI.

That brings us to the question of whether the CDW authorized the State Police entry onto defendant's driveway. We begin our examination of that question by reiterating that this case involves three analytically distinct law enforcement acts of constitutional significance: entering the driveway to conduct a search within the meaning of Jones, 565 U.S. at 404, opening/entering/manipulating the subject vehicle when installing the GPS device, and electronically monitoring the vehicle's movements over time. The CDW expressly authorized handling or opening the vehicle to install the GPS device and expressly authorized the subsequent electronic tracking of the vehicle's movements. Entering onto defendant's residential property was not. Indeed, the CDW does not mention the driveway. Further, the detective

acknowledged on cross examination that he did not include any information concerning the driveway in his CDW application.

The State nonetheless contends the CDW implicitly[17] authorized entry into the home's curtilage. However, the State cites no precedential authority for the proposition that a search warrant can tacitly designate the place to be entered/searched. Rather, the State relies chiefly on language in the CDW that ordered the installation of the GPS device "in a [manner] to be determined by the executing officers so as to minimize the chances of detection of the device by the person whose vehicle is the subject of this warrant."

We are unpersuaded that this language authorized State Police to enter onto defendant's private residence. For one thing, any such construction of the CDW language disregards the plain text of the Fourth Amendment and Article I, Paragraph 7, which mandates that a search warrant must "particularly describe[]" the place to be searched. The particularity requirement precludes such broad delegation to law enforcement officers regarding what private premises they may enter to execute a search warrant.

---

[17] We note the issue of whether the CDW "implicitly" authorized entry onto defendant's property is separate and distinct from the issue of whether the State Police had "implied license" to go onto the driveway and approach the parked vehicle. The latter question pertains to the scope of the curtilage doctrine, which entails a fact-sensitive question of law. The former question pertains to the scope of the CDW, which is determined solely by the language in the four corners of the warrant.

We have no quarrel with the State's contention that the CDW's installation authorization extended to anywhere within the issuing judge's territorial jurisdiction[18] provided the installation occurred on public property, as originally contemplated by the State Police. But it is another matter altogether to read the CDW language as tacitly authorizing an incursion of defendant's private residence. We reiterate and stress that the physical entry upon the home's curtilage is separate and distinct from the incursion of the subject vehicle. And as we have emphasized throughout this opinion, homes— and their curtilage—are accorded special protections. We hold that those enhanced protections include strict enforcement of the particularity requirement codified in the Warrant Clause.

Our Supreme Court's decision in State v. Marshall, 199 N.J. 602 (2009), provides helpful guidance. The Court in Marshall held that the search warrant in that case lacked sufficient particularity because it did not specify which apartment in a multi-unit apartment building was to be searched, leaving the determination of whether the warrant conditions were satisfied to the police upon their arrival at the building. Id. at 613, 615-17. The Court stressed that "the failure to comply with the particularity requirement and the failure to have

[18] Superior Court judges have statewide jurisdiction for purposes of issuing a search warrant. R. 3:1-2.

a neutral magistrate or judge determine whether the conditions in the warrant were satisfied are constitutional violations." Id. at 617-18.

The Marshall Court added that the specification deficiency was not cured by a warrant provision conditioning authorization to enter on police first determining which unit the suspect had access to. The Court explained,

> the general description [of the place to be searched] here would not pass muster because the nature of the circumstances either permitted the police to discover the specific apartment unit prior to obtaining the search warrant, or at minimum, would have allowed the police to return to the court to amplify the affidavit with the precise unit prior to executing the warrant.
>
> [Id. at 617.]

We read Marshall as disallowing search warrants that are tantamount to "general" warrants, delegating to police the discretion to determine the geographic scope of the warrant's authority. Rather, that function is reserved for the issuing judge, either at the time the warrant is first issued or thereafter on a re-application to the judge.

Relatedly, we reject the State's contention that the need to ensure surreptitious installation recognized in the CDW implicitly gave them authority to enter the home's curtilage. We acknowledge the whole point of surreptitious vehicle tracking would be lost if defendant became aware that a GPS device was attached to his vehicle. But the CDW's reference to the need

43

"to minimize the chances of detection of the device by the person whose vehicle is the subject of this warrant" was not some kind of code authorizing physical entry onto unspecified private property. This is not a situation where the CDW expressly authorized entry onto defendant's driveway but left to State Police the discretion whether to install the device there or instead effect the installation on a public street or parking lot. That form of delegation would not run afoul of the particularity requirement because the driveway would have been particularly described.

VII.

Our conclusion that physical entry onto defendant's driveway was a warrantless incursion, and ultimately unlawful, is regrettable to the extent that the CDW might well have authorized entry onto defendant's private property. See Caronna, 469 N.J. at 490 (stressing that "[s]uppression of evidence . . . has always been our last resort, not our first impulse" (quoting State v. Presley, 436 N.J. Super. 440, 459 (App. Div. 2014))). But permission to enter onto defendant's residential property is not what the State Police asked for. As we have noted, their initial plan was to install the GPS devices while on public property, ostensibly because that would entail less risk the installation would be captured by defendant's outside surveillance camera, thereby exposing the ongoing narcotics investigation.

We add that it would have been a straightforward matter for the State Police to supplement the CDW once their original plan to install the devices on public property was frustrated. Cf., Marshall, 199 N.J. at 617 (noting that the police should have returned to the issuing court once they gathered the additional information so that the court could determine whether probable cause exists to search the specific place). The detective need only have averred under oath that the subject vehicles were known to park on the driveway. The judge who issued the CDW had already found probable cause to believe defendant was involved in drug trafficking and that electronic surveillance of his vehicle was warranted.

To the extent the exclusionary rule serves an educative function, designed in part to deter future unlawful conduct, see State v. Chisum, 236 N.J. 530, 548 (2019), we take this opportunity to remind police and prosecutors that having a strong basis for obtaining a search warrant by no means excuses the requirement to get one before conducting a search. There is, of course, no probable cause exception to the warrant requirement. Probable cause is a threshold prerequisite for a warrant, not a substitute for one. Stated another way, the constitutional error committed in this case is not rendered harmless by the fact it is all but certain a CDW particularly describing defendant's driveway and authorizing police entry thereon would

45

have been issued if applied for. We add, it is irrelevant whether the State Police believed in good faith that the CDW authorized them to tread upon defendant's driveway to install the GPS device. As we noted, there is no "good faith exception" in this State. See Novembrino, 105 N.J. at 153; State v. Johnson, 168 N.J. 590 (2001) (rejecting the State's argument to affirm the defendant's conviction because the police officers had relied on the validity of the "no-knock" warrant in good faith).

The State at oral argument acknowledged that going forward, the better practice would be for police to preserve the option to enter upon a target's private property when installing a GPS device either by requesting such authority when initially applying for a CDW or by seeking an amendment to the CDW if the practical need to enter upon private residential property later arises. The State's acknowledgement is important because the authority to effectuate that prudent precaution rests ultimately with prosecutors. We note that pursuant to an Attorney General Directive, all search warrant applications must be reviewed and approved by an assistant county prosecutor, deputy attorney general, or assistant attorney general. See Off. of the Attorney General, Law Enf't Directive No. 2002-2, Approval of Search Warrant Applications, Execution of Search Warrants, and Procedures to Coordinate Investigative Activities Conducted by Multiple Law Enforcement Agencies, §

46

2 (Aug. 8, 2002). As part of a prosecutor's approval and oversight function under that directive, implementing the "better practice" that the State acknowledged would help to protect both the constitutional rights of the suspect of the investigation and the admissibility of evidence derived from the GPS tracking.

## VIII.

To sum up, the entry onto defendant's driveway for the purpose of installing the GPS device was a search that needed to be authorized by a search warrant or a recognized exception to the warrant requirement. The CDW did not particularly describe the driveway as a place to be searched and thus did not authorize the police entry. That means the entry was a warrantless intrusion. Because the State has not asserted much less proved an exception to the warrant requirement, such as exigent circumstances, the entry onto the driveway was unlawful.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3221-23

# APPENDIX

FILED, Clerk of the Supreme Court, 16 Aug 2024, 089752, AMENDED



Da 18

A-3221-23



A-3221-23



Da 21

50

A-3221-23



Da 22

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hurley*

Clerk of the Appellate Division

A-3221-23